June Term, 1862.

SWEET
v.
MITCHELL.

## SWEET VS. MITCHELL, impleaded &c.

Where a judgment creditor, who had bought lands of his debtor upon execution, agreed verbally to reconvey them to him on payment of a certain sum, and a third person advanced that sum (by paying the debtor's check therefor, for which the debtor afterwards gave his note), and took the conveyance to himself upon a verbal agreement with the debtor that he would hold the land as security for what the debtor owed him, parol proof of the facts is admissible to show that the transaction was a mortgage. *Plato vs. Roe,* 14 Wis., 453, followed.

But where a person has made a deed of lands, absolute on its face, as a security for money lent, and afterwards executes to the lender a deed of release in which it is expressly declared that the equity of redemption is, for a substantial consideration, released, parol proof is not admissible to show that the sole object of the release was to convey such a title to the releasee that he could convey an indefeasible estate in such portions of the lands as he might be able to sell, applying the avails to the credit of the releasor, and that the equity of redemption in the portions not so sold, should remain unaffected by the release.

Such evidence would contradict the deed of release; and the right claimed to have been reserved after the execution of the release was substantially a trust.

A complaint alleged an agreement between A, B, and C, that A should purchase lands of B, to be sold under a decree of foreclosure in favor of C, and hold the same until from the rents and profits and the avails of sales of portions thereof, he should realize sufficient to pay the decree, and that one-third of the remainder of the property should belong to C and two-thirds to B; and also alleged a further agreement between A and B that A should hold said two-thirds as security for any indebtedness of B to him. *Held,* that oral evidence of said agreements was not admissible for the purpose of showing that A held the sheriff's deed of said lands as a mortgage to secure B's indebtedness to him, because there could be no proof showing such mortgage, without prior proof of a parol trust for the benefit of B and C, in the foreclosure sale, in violation of the statute of frauds.

A complaint having alleged that the plaintiff executed a release of his equity of redemption of lands, upon a parol understanding that the lands should remain in mortgage as before, except so far as the other party might sell portions and apply the avails to payment of the mortgage debt—and having al-

leged also in regard to other lands, that the *defendant* bought them at sheriff's sale upon a parol trust for his benefit—the plaintiff was properly denied leave to amend his complaint, on the trial, by alleging that the deed of release was procured from him by fraud, and that the defendant procured the sheriff's deed also by fraud, in having promised before the sale to execute a written agreement showing the trust and afterwards refusing to execute it.

The policy of the law favors great liberality in allowing amendments to perfect the pleading in respect to the cause of action originally set out; but it does not allow amendments on the trial changing the cause of action from one thing to another.

The allegation that the deed of release was procured by fraud, without alleging any fact showing how the fraud was perpetrated, was also too general to require the court to allow it as an amendment on the trial. A concealment by the party to whom the release was made, of his intention to have the instrument operate according to its legal effect, can hardly be said to be an act of fraud in procuring it.

APPEAL from the Circuit Court for *Dane* County.

The complaint in this action alleged in substance the following facts: On the 2d of February, 1850, the plaintiff was indebted to the defendant *Mitchell* (then and since a banker in Milwaukee), in the sum of about $14,000. The plaintiff was at that time seized of a tract of land, (particularly described), in the town of Lake in the county of Milwaukee, and of lots 1 to 12, inclusive, in block 29 in the fifth ward of the city of Milwaukee. The tract of land situate in the town of Lake, and thirteen undivided sixteenths of another tract of land owned by the plaintiff, were at the time encumbered by a mortgage previously given by the plaintiff to one Delano to secure the sum of $2000 and interest, and the mortgaged premises were, on the 2d of February, 1850, advertised or about to be advertised for sale on a decree of foreclosure in the United States District Court. On the 2d of February, 1850, the plaintiff applied to said *Mitchell* to advance for him the amount necessary to satisfy said decree, and it was then agreed between the plaintiff and said *Mitchell* that he should convey to said *Mitchell* said real estate in the town of Lake and said block 29, and that said *Mitchell*, in consideration thereof, would advance the amount required to satisfy said decree and purchase said mortgaged premises in his own name at the foreclosure sale, and hold all said real estate as security for the amount of the plaintiff's then indebtedness to him and for the amount (about

$2500) which he would have to advance on said sale, and for any other sum of money which he might loan the plaintiff or advance for him while he should hold the title to said real estate, and that said *Mitchell* should be at liberty at any time to sell any portion of said estate and apply the avails thereof upon the said indebtedness then existing, or which should thereafter accrue. In pursuance of said agreement, the plaintiff, on the 2d of February, 1850, conveyed all said real estate in the town of Lake, and all of said block 29, to *Mitchell*, by a common warranty deed, and on the 25th of that month *Mitchell* purchased said mortgaged premises at the foreclosure sale for about $2500. At the time of said agreement it was understood by the parties, that the plaintiff would require, and that said *Mitchell* would loan to the plaintiff, from time to time, other sums of money, though there was no definite agreement to that effect expressed, nor any particular sum specified. During the years between 1850 and 1859, inclusive, said *Mitchell* did loan to the plaintiff, at different times, different sums of money upon said security, some portion of which the plaintiff repaid to said *Mitchell* directly, and the balance was paid by the avails of portions of said property sold by *Mitchell* pursuant to said agreement. About the 5th of February, 1852, the plaintiff being indebted to *Mitchell* in a considerable amount, and it being understood between them that said *Mitchell* would advance other considerable sums for the plaintiff in the purchase of judgments and other indebtedness against the plaintiff, and the plaintiff then being about to leave the city of Milwaukee to be absent for an indefinite time, and the said *Mitchell* not having any written authority from the plaintiff to sell or convey any part of said real estate, and it being expected that said *Mitchell* could, during the plaintiff's absence, sell some portion of said property, and that the amount which he might advance for the plaintiff during his absence might exceed the amount realized from such sales, said *Mitchell* requested the plaintiff to execute some paper or contract which would put it in his power to make any such sales as occasion might offer, in such manner as to confer upon purchasers an absolute title freed from the equitable rights of the

plaintiff; and also requested the plaintiff to give him addi-
tional security to be held by him upon the same terms and
conditions as those upon which he held the other property
before mentioned. The plaintiff, therefore, executed to him
an instrument under seal, dated February 5th, 1852, which
was not acknoweldged and was attested by only one wit-
ness, a copy of which is set forth in the complaint. This
instrument recited that in consideration of $15,000 to him
in hand paid by *Mitchell*, said *Sweet* released and quit-claimed
to said *Mitchell*, his heirs, &c., all his right, title, interest and
claim, either in law or equity, to the said tract of land in the
town of Lake, and to the whole of block 29 in the fifth ward
of the city of Milwaukee, and to the thirteen undivided six-
teenths of the tract before referred to as included in the
mortgage to Delano, and also one or two other lots, and
closes in these words: "It being expressly understood that
if I have any equity of redemption or any other interest
in and to said lots or parcels of land, the same, for the
aforesaid consideration, is hereby relinquished, and I do fur-
ther hereby release and discharge the said *Mitchell* from all
causes of action, if I have any, by reason of anything which
may have transpired between said *Mitchell* and myself in
relation to said lands or anything appertaining thereto."
This release was executed without any new consideration,
said *Mitchell* not paying anything therefor nor releasing or
discharging any of the plaintiff's indebtedness to him, and
was not made for the purpose of extinguishing the rights of
the plaintiff in said property, except so far as it authorized
*Mitchell* to dispose of the same absolutely and apply the
avails of subsequent sales in discharge of the plaintiff's in-
debtedness to him; and *Mitchell* expressly agreed with the
plaintiff to hold the property as security as aforesaid, apply-
ing the avails of sales as above mentioned, notwithstanding
the execution and delivery of said release. After the exe-
cution of said instrument, the defendant continued to loan
money to the defendant and to advance and pay money for
him, and during the years 1855–6–7, did, at his request and
as his agent, and in consideration of holding such security,
advance money to satisfy certain judgments against the

June Term, 1862.

SWEET
v.
MITCHELL.

plaintiff (which are specified in the complaint), under an agreement that the amounts which *Mitchell* should actually pay therefor should be regarded as an indebtedness from the plaintiff to him, secured by all said real estate, all which sums so advanced were fully paid by a portion of said real estate so held by said *Mitchell.* It was verbally understood between the plaintiff and *Mitchell,* from the time the first conveyance was made to him, that he was authorized to sell and convey any portion of the estate so held by him as he might find opportunity, and that he should apply the avails of such sales to the payment of the plaintiff's indebtedness to him; and all the estate subsequently conveyed and released to him was held by him subject to a like power of sale, with a like duty to apply the avails, except as hereinafter expressly stated.

On the 12th of September, 1849, the plaintiff executed to one Bates and one Sage a mortgage for $16,000, upon the tract of land before mentioned as situated in the town of Lake, and upon certain other real estate, described in the complaint. About the 1st of September, 1851, the plaintiff surrendered possession of said mortgaged premises, except said tract in the town of Lake, to said Sage and one Slocum (who then owned said mortgage), upon a certain agreement as to the use of the premises surrendered, and the mortgagee entered into possession and received the rents, &c. A suit was afterwards brought to foreclose that mortgage, pending which it was agreed between the plaintiff and Sage (who was authorized to control the mortgage), that Sage should extend time of payment of the mortgage debt until it could be realized out of the rents and avails of sales of said mortgaged property; that a decree should be entered for the amount due on said mortgage, including the cost of certain improvements, and ordering a sale of the premises in the usual form of a foreclosure decree; that there should be indorsed upon the decree such sum as the plaintiff ought in equity to receive for the use of the premises from the time of the surrender to the day of sale; that said *Mitchell* should act as a trustee for the parties interested, and bid off the mortgaged premises at the sale and hold the same until, from

the rents or sales of portions thereof, he should realize sufficient to satisfy the balance of said decree; and that after the decree should be satisfied, two-thirds of the profits or avails of sales so remaining in his hands should belong to the present plaintiff, and the other third thereof should belong to said Sage. Said *Mitchell* agreed with the plaintiff and said Sage to undertake said trust, and it was agreed between the plaintiff and said *Mitchell*, that the latter should hold the plaintiff's two-thirds of said property, or its avails .which should remain in his hands, as security for any indebtedness from the plaintiff to him, upon the same terms and for the same purpose as he was then holding the other property which had been conveyed and released to him by the plaintiff. In pursuance of said agreement, the decree of foreclosure and sale of the mortgaged premises was entered in the circuit court for Milwaukee county, and in February, 1856, said *Mitchell,* as trustee as aforesaid, bid off and purchased the premises so ordered to be sold, and immediately afterwards executed and delivered to said Sage a statement in writing acknowledging the said trust, and promising to perform the same; but the plaintiff cannot state the precise language of said written declaration of trust. Said *Mitchell* has realized from the rents and profits and the avails of sales of a portion of the property purchased by him under .said de-cree, more than $50,000 over and above the balance due on said decree and the disbursements made or expenses incurred in the execution of said trust, and a large part of said estate remains undisposed of, two-thirds of which funds and property so remaining in his hands belong to the plaintiff, and are held by *Mitchell* only as security for the plaintiff's indebtedness to him.

In 1850, one Blossom recovered two judgments against the present plaintiff for about $25,000, to satisfy which he caused to be sold several parcels of real estate (among which were the west half of lots 5 and 6, and lots 7 and 8, and the south one-third of lot 9, all in block 89), and became himself the purchaser. About the 23d of January, 1857, the said Blossom agreed to convey to the plaintiff the property so purchased by him, and assign to him said judgments, on

the payment by the plaintiff of $3,600. The plaintiff applied to *Mitchell* to advance that sum for him, and take the conveyance and assignment to himself as security for that advance and for any other indebtedness of the plaintiff to him. *Mitchell* agreed to do so, and paid the plaintiff's check for the amount, and took the conveyance and assignment from Blossom accordingly. The amount of the check, together with other indebtedness of the plaintiff to *Mitchell*, was included, at the time this action was brought, in a note for over $6000, held by *Mitchell* against the plaintiff. On the 15th of April, 1850, *Mitchell* entered a judgment in his favor against the present plaintiff, on an indebtedness of the plaintiff to him at that time for $14,208.48, which remains unsatisfied of record. The complaint also alleges that the plaintiff had been and still was in possession of certain portions of the real estate so conveyed to *Mitchell* by Blossom.—In reference to all the real estate of the plaintiff of which *Mitchell* had acquired the legal title in the several ways above described, the complaint alleges that he had received from sales thereof, and now held, large sums of money, amounting to upwards of $50,000, over and above all indebtedness of the plaintiff to him, and also held a portion of said real estate which he ought to reconvey to the plaintiff, but that he had refused, on the plaintiff's demand, to account for the same. Prayer, that the conveyance from the plaintiff to *Mitchell* dated February 2d, 1850, and the instrument in writing executed by him to *Mitchell* about the month of March [February], 1852, may each be declared to be a mortgage, and that the title acquired by *Mitchell* at the foreclosure sale under the decree of the U. S. District Court, may be declared to be held as a mortgage; and that said *Mitchell* may be adjudged to hold the title to the real estate purchased by him under said decree of the circuit court of Milwaukee county, in trust as before stated; and that said conveyance and assignment of judgments by Blossom to *Mitchell*, may be adjudged to have been made to said *Mitchell* by way of security; that said *Mitchell* be required to account &c., and to make proper conveyance to the plaintiff; and for general relief.

The answer of *Mitchell*, among other things, denied the ma-

terial·facts alleged in the complaint, and set up the statute of frauds. For further defense to so much· of the complaint as relates to the conveyance made by Blossom to *Mitchell*, the answer stated, that Blossom, at the time of such conveyance held, as against *Sweet*, a perfect and indefeasible title to the property included therein, but that the defendant *Mitchell* believed that the judgments in favor of Blossom against *Sweet*, upon which said property had been sold, were fraudulent as to the creditors of *Sweet*, and that said property was therefore subject to the lien of sundry judgments held by him against *Sweet*; that said Blossom executed a deed conveying said property to said *Mitchell* in full, and he paid the purchase money and thereby acquired an absolute title to.the same.

On the trial, the plaintiff read in evidence a copy of an instrument signed by *Mr. Mitchell* and dated February 23d, 1850, containing an acknowledgment that the conveyance made by *Sweet* to him, February 2d, 1850, was placed in his hands as a collateral security for indebtedness already incurred or thereafter to be incurred, and agreeing to release the property to *Sweet* upon full discharge of all indebtedness existing at the time of repayment, and all advances that said *Mitchell* might make to pay incumbrances on the property, &c. He also offered to read the deposition of *Mr. Mitchell*, and the defendants objected that parol evidence was inadmissible to prove the agreement set out in the complaint between *Mitchell* and *Sweet*, and between *Sweet* and the defendants *Mitchell* and *Sage*; but upon suggestion of the court, the deposition was read subject to said objection. In the deposition, *Mr. Mitchell* testified in relation to the lands purchased under the *Sage* foreclosure, that there was no such agreement between him and *Sweet* as is set out in the complaint, and that he purchased those lands at the foreclosure sale,· and took, as to *Sweet*, an absolute title; that he intended, after he had fully repaid himself for all that he had paid, including· moneys paid in purchasing judgments, and for all trouble, to deal generously with *Sweet*, but there was no agreement whatever with *Sweet* that he should have any interest in said property. He also testified that at the time *Sweet* executed to him the deed of release, of February 6th,

1852, he allowed *Sweet* the sum of $15,000 for the lands embraced in that conveyance as so much paid on what *Sweet* then owed him, and that there was no agreement at that time nor afterwards that he should hold those lands as security or by way of mortgage. The witness was asked who negotiated the transaction between him and Blossom. He answered, " I think *Mr. Sweet* came to me and intimated that Blossom would convey the property he held under his sheriff's deed, for $3600, and *Sweet* wished me to take the conveyance and advance the money. The conversation referred exclusively, according to my recollection, to the lots in block 89 in the seventh ward, on part of which *Sweet* now lives. I at first declined to go into the transaction, but *Sweet* was anxious to get the title out of Blossom's hands. I accordingly agreed to it." Being questioned as to the value of the property conveyed by the deed of Blossom, the witness estimated the lots in block 89, at from $16,000, to $19,000, and gave various estimates as to the other real estate embraced in that deed. He also stated that he paid the consideration for the deed from Blossom, being $3,600. " It was paid by me upon an order of *Mr. Sweet*, he having previously told me what the amount would be, and that he would immediately call in and give his note for that, and also another note of his for a few hundred dollars which I held. One object which I had in view in this transaction, was to collect a debt of about $3,600, which the bank, or I for the bank, held against Mr. Blossom. That note, and the $3,600 that I paid Mr. Blossom, were put in one note. The note has been renewed from that time, at 60 or 90 days, until the present date of the note in December, 1859, interest added on each renewal. There have been some further sums put into the note ; I forget the amount; some portion of it was for paying taxes in block 89. The note was at one time larger than it is now, but in 1859 I was enabled to make a collection, which was applied on it with consent of *Sweet.*

The plaintiff was sworn as a witness in his own behalf, and proposed to testify that *Mitchell* held the lands conveyed to him by the several deeds in the complaint mentioned, " according to the agreements alleged in the complaint, in

mortgage and only as security for advances and for moneys loaned before, at the time of executing and after the date of said conveyances." The defendant objected, and the court decided that "parol evidence was inadmissible to establish the allegations in the complaint that said *Mitchell* held said lands as security as therein alleged." The plaintiff then offered to prove every allegation in his complaint by parol evidence, except the deeds and papers mentioned in the complaint and the defeasance to the deed of February 2d, 1850 ; but the court decided that parol evidence was not admissible for that purpose, "and ruled out all parol proof which had been received to prove such allegations." The plaintiff then asked leave to amend his complaint so as to charge that *Mitchell* obtained the writing under seal, a copy of which is set out in the complaint, by fraud, and that the plaintiff signed and delivered it to him in ignorance of its contents, and believing that it only expressed that *Mitchell* should be authorized to sell any portion of the estate therein mentioned as occasion might offer, applying the avails on the plaintiff's indebtedness to him, and holding any unsold portion of the premises in mortgage as before ; and that said *Mitchell* intended, by procuring such deed of release, to cut off the interest of the plaintiff, in said lands, and thereby hold said lands absolutely as his own ; but that he carefully concealed such intention from the plaintiff and represented to him that his rights should not be affected by such release, except as it gave authority to *Mitchell* to sell and apply the proceeds as aforesaid. The court refused to allow the amendment. The plaintiff also moved for leave to amend his complaint so as " to charge fraud and collusion by and between *Mitchell* and Sage, in obtaining for said *Mitchell* the title to the property purchased by said *Mitchell* at the foreclosure sale under the decree mentioned in favor of Russell Sage, whereby they induced the plaintiff to make no further defense to said foreclosure suit ; and that the plaintiff, relying upon their agreement as set out in the complaint, dissuaded one Martin (who attended said sale for the purpose of bidding $30,000 for a part of said property) from bidding at all at said sale, so that said *Mitchell* obtained title at such sale for $16,000, to prop-

erty worth more than $30,000; that said *Mitchell* promised the plaintiff before said sale, to execute a deed declaring the trust set out in said complaint, immediately after said sale; that said *Mitchell*, immediately after the sale, refused to execute said deed, but in pursuance of a previously settled scheme between him and said Sage, entered into a contract in writing with Sage, to divide the whole of said property and its avails between themselves, to the exclusion of the plaintiff and in fraud of his rights, and now claims that he acquired at said sale an absolute title to said property as against the plaintiff." The court refused to allow said amendment. The plaintiff also moved to amend his complaint by stating in substance that after Blossom had purchased the plaintiff's property upon execution, as stated in the complaint, he promised the plaintiff to reconvey the property to him if he would pay the amount of his indebtedness to him within any reasonable time, and that in pursuance of that understanding the plaintiff paid said Blossom more than $20,000, leaving a balance due of only $4,000, and that Blossom then agreed to convey said property for $3,600, and wait on the plaintiff for the balance; that thereupon the plaintiff applied to said *Mitchell* to loan him the said sum of $3,600, which *Mitchell* agreed to do if the plaintiff would procure Blossom to convey all said estate to him and assign to him the Blossom judgment, in part unsatisfied, to secure that sum and all other indebtedness from the plaintiff to said *Mitchell;* that accordingly said *Mitchell* loaned to the plaintiff said sum of $3,600, for which the plaintiff gave his promissory note, which *Mitchell* still holds against him, and caused said Blossom to convey said real estate to said *Mitchell* and assign to him said judgment (worth then more than $25,000) as security as aforesaid; that said *Mitchell* fraudulently designed to entrap the plaintiff into getting said loan and giving said security with the intention to deprive him of said real estate entirely, never intending to hold it as security. The court refused to allow said amendment. The plaintiff then offered an amendment which was the same in substance as the last preceding one, except that instead of the allegation "that *Mitchell* fraudulently formed

the design," &c., it stated "that the plaintiff borrowed of said *Mitchell* said $3,600 and gave him his note therefor, and agreed with said *Mitchell* to procure said Blossom to convey said lands to him to be held by him as security, as in the complaint alleged, and he agreed to receive said deed and hold said land as such security; that the advancement of said money and the receipt of said deed, and the agreement of *Mitchell* to hold said lands as security, were all simultaneous, and the deed was procured from Blossom and delivered by the plaintiff to *Mitchell* for the purposes and under the agreement aforesaid." This amendment the court allowed. The plaintiff was then asked by his counsel, "What agreement, if any, had you with *Mitchell* respecting his advancing or loaning money to you to pay to Blossom to procure a deed from him, in January, 1857 [of the lands described in the complaint as purchased by him on executions against you], and if at your request Blossom should make a deed to *Mitchell*, whether there was any parol agreement between you and *Mitchell* as to his holding the lands conveyed or to be conveyed by Blossom, as security for money loaned, and if there was, state the whole of it"? The defendants objected, on the ground that such an agreement could not be proved by parol evidence, and the court sustained the objection. The plaintiff was asked by his counsel what money or property, if any, he had paid to Blossom as part of the purchase money of the land conveyed by Blossom to *Mitchell*; and he answered that he had paid to Blossom, as early as June, 1854, from $20,000 to $22,000, which was to be applied upon the amount due to Blossom on the judgments and redeeming the lands sold. He was then asked, "Had you at the time of or before this payment, an understanding or agreement with Blossom, that if you paid him all you owed him on those judgments in his favor against you, including the amounts he bid off said lands for, of which he then had a sheriff's deed, you should have from him whatever title he had acquired by the sheriff's sale and deed; if so, state it fully"? This question was objected to, on the ground that such agreement could not be proved by parol, and the court sustained the objection. The plaintiff then

stated to the court that he could not sustain his action without proving the parol agreements, the testimony to prove which had been ruled out.—The circuit court dismissed the bill, and the plaintiff appealed.

*J. Downer* and *Mat. H. Carpenter*, for appellant:

1. The fraud claimed in the proposed amendments was merely a circumstance to take the parol contracts out of the statute of frauds, so that the court could enforce those contracts. The complaint would have set out, if the proposed amendments had been made, a cause of action on contract as before. In such cases courts of equity uniformly carry out the parol contracts. *Brown v. Lynch*, 1 Paige, 147, and authorities cited in the opinion of the vice-chancellor; *McCulloch v. Cowher*, 5 Watts & S., 430; *Taylor v. Luther*, 2 Sumner, 228; *Brainerd v. Brainerd*, 15 Conn., 575; *Lounsbury v. Purdy*, 18 N. Y., 520; Story's Eq. Jur., § 768. 2. If the effect of the proposed amendments was only to supply a defect in the complaint, and the relief to be given was the same, to wit, to enforce the parol contracts, then certainly the amendment as to so much as relates to the deed of February, 1852, and the land in it, should have been granted, for the statute of limitations in a new suit would have run on that part of the plaintiff's claim. R. S., 1858, chap. 138, secs. 22, 24; *Schieffelin v. Whipple*, 10 Wis., 81; *Miller v. Watson*, 6 Wend., 506; 1 Wend., 93; *Chapman v. Webb*, 1 Code Rep., 388; *Lackner v. Turnbull*, 7 Wis., 105; 4 Cow., 124. 3. To the deed of February 2, 1850, of *Sweet* to *Mitchell*, there was a written defeasance, which, by its terms, provides for future advances to pay incumbrances on the land; and *Mitchell* purchased the land in that deed immediately thereafter at the Delano foreclosure sale. He held the lands after that purchase the same as before, only as security. *Quackenbush v. Leonard*, 9 Paige, 344; Story's Eq., § 1211, § 1211a. In fact, his taking the deed just before the foreclosure sale, and giving the defeasance in which he agreed to hold the property as security for future advances, including incumbrances, was an agreement to advance the money to pay the Delano mortgage. See also authorities cited to the fifth point. 4. The right to prove by parol that the conveyance made

by *Sweet* to *Mitchell*, bearing date February 6, 1852, although absolute in form, was only a mortgage, is decided by this court in the case of *Plato vs. Roe*, 14 Wis., 453. It was therefore error in the court below to rule out such parol evidence. It will be argued that the deed on its face purports to convey the equity of redemption. So does every quitclaim deed; it purports to convey all the title a man has; and there can be no more difficulty in proving that a deed conveying the equity of redemption was a mortgage, than there is in proving that any other deed, absolute on its face, is a mortgage; certainly there can be no difficulty in the case when the court considers the particular averments respecting this deed in the complaint. 5. The parol evidence should have been received to prove that *Mitchell* purchased the lands at the Sage foreclosure sale as stated in the complaint. 1 Paige, 147; *Roberts vs. McMahan*, 4 Greene (Iowa), 34; *Davis vs. Hopkins*, 15 Ill., 519; *Hoagland vs. Hoagland*, 1 Green's Ch. R., 501; 3 Green, 310; 4 Halstead, 206; 16 Ind., 177; 31 Miss., 427. The principle that underlies these authorities is, that wherever the relation of *debtor* and *creditor* exists, and real estate is either conveyed, by the debtor himself or by him procured to be conveyed, or by previous agreement with him bid off by the creditor at sheriff's or other public sale, under an agreement to hold the same as security for indebtedness, the relation of mortgagor and mortgagee in fact exists, and the agreement, although in parol, shall be by the courts carried out. And such parol agreement is in fact no more within the statute of frauds than if the absolute deed had been made to the creditor direct by the debtor. At a sheriff's sale the debtor does in fact make a quit-claim deed to the purchaser. The sheriff's deed in a foreclosure sale is the same as a quit-claim deed from all the parties to the suit (R. S. 1849, chap. 84, sec. 83), and if the debtor, before the sale, agrees with the creditor that he may purchase at the sale and hold the property as security, it is but an agreement to give him a quit-claim deed, the sheriff acting as his agent in the matter. The cases of *Botsford vs. Burr*, 2 Johns. Ch. Rep., 416; *Bander vs. Snyder*, 5 Barb. (S. C.), 63; *Lathrop vs. Hoyt*, 7 id.,

59, and several other cases in New York, are apparently opposed to the cases above cited, but can be reconciled upon the principle that there was no promise found by the court to repay the money paid by the purchaser at the sheriff's or master's sale—in brief, that the relation of *debtor* and *creditor* did not exist, and of course that there could be no mortgage or trust to pay a debt, as no debt existed. But if those cases are not satisfactorily explained on that principle, still the great weight of authority is, that where there is a debt, as in this case, for the payment of which the purchaser at public sale is to hold the property, he holds it in mortgage, and it may be so proved by parol. 6. Parol evidence was admissible to show that the lands embraced in the Blossom deed, were held by *Mitchell* as a security for the plaintiff's indebtedness. *Mitchell* testified that he held the lands as security for a note of $3600, and that Blossom conveyed them to him at the request of *Sweet.* He admitted as to lots in block 89 nearly all that is claimed by the plaintiff. It makes no difference whether *Sweet* conveyed the lands himself to *Mitchell* or procured Blossom who held them for him to do it. In either case he could hold them only in mortgage. The plaintiff proposed to prove a parol agreement by Blossom to convey to him the lands embraced in the Blossom deed on payment of the balance due to Blossom. Testimony to prove this agreement was ruled out after the plaintiff had testified that he had paid Blossom the principal part of the purchase money, and after *Mitchell* had testified that *Sweet* was in possession of a portion of the property. This evidence was competent as preliminary proof to the fact that *Mitchell* held the lands as security, and to show that *Sweet,* by having taken possession and paid part of the purchase money, had, as between him and Blossom, a title to the lands, which, although resting on a parol agreement, was not within the statute of frauds. *Mr. Mitchell's* testimony also shows that he had received part of the purchase money.

*J. C. Hopkins,* for respondent *Mitchell:*

The deed of February 2, 1850, and *Mitchell's* letter of February 22, 1852, in which the agreements of the parties were reduced to writing, could not be explained, varied, enlarged

or contradicted by parol. *Jarvis vs. Palmer*, 11 Paige, 650. These instruments together make *Mitchell's* interest under that deed only a mortgage interest. 2. The plaintiff claims to show by parol that *Mitchell* holds as security only, the title to the lands acquired at the Delano mortgage sale ; but such evidence is inadmissible. Before the statute abolishing resulting trusts, no trust resulted when the party attempted to be charged as trustee advanced money to purchase real estate, and *parol* proof was incompetent to show an agreement to purchase for the benefit of another. *Botsford vs. Burr*, 2 Johns. Ch. R., 406 ; *Willis vs. Willis*, 2 Atkyns, 71 ; *Hughes vs. Moore*, 7 Cranch, 176 ; 4 East, 577 ; *Hall vs. Shultz*, 4 Johns., 240 ; *Sherrill vs. Crosby*, 14 id., 358 ; 2 Story's Eq. Jur., § 1201 ; Willard's Eq., 600 ; 2 Wis., 552; *Getman vs. Getman*, 1 Barb. Ch. R., 499. But resulting trusts are now abolished. In the case of *Brown vs. Lynch*, 1 Paige, 147, the chancellor held that the case was out of the statute of frauds because the defendant was guilty of fraud in getting the parties to make the agreement which he did not mean to fulfill ; but the doctrine of this case has not been followed in subsequent cases in New York, and is expressly repudiated in the cases cited from 7 Barbour and 2 Wisconsin. See also *Brewster vs. Power*, 10 Paige, 562 ; *Bander vs. Snyder*, 5 Barb., 63 and 71 ; *Lathrop vs. Hoyt*, 7 id., 59 ; *Rogan vs Walker*, 1 Wis., 584 ; *Whitton vs. Russell*, 1 Atk., 448 ; *Hoge vs. Hoge*, 1 Watts, 163 ; *Pinnock vs. Clough*, 16 Vt., 509 ; *Dean vs. Dean*, 6 Conn., 284 ; and especially *Fairchild vs. Rasdall*, 9 Wis., 379. 3. The deed of February 6, 1852, bears on its face a release of the plaintiff's equity under the deed of 1850, and cannot be contradicted in that respect by parol. 11 Paige, 650 ; 2 Wis., 552. 4. As to the property covered by the Sage mortgage, the trust of 1850 having been discharged by the deed of 1852, the purchase of this property was a new and independent arrangement. The complaint clearly sets up an express trust; and the authorities before cited in reference to the Delano sales apply with still greater force to this. See also *Rathbun vs. Rathbun*, 6 Barb., 98 ; *Gilbert vs. Carter*, 10 Ind., 16. 5. As to the Blossom property, *Mitchell* paid his

own money and took a deed from a third party; and under our statute, no fraud being alleged in the transaction, the plaintiff cannot show by parol that *Mitchell* took the deed as trustee for him. It is not like the case of a deed by the plaintiff to the defendant for that purpose, for there the plaintiff would have parted with something of his own, from which a trust, on proof of the terms upon which the deed was given, might be *implied*; but in this case the plaintiff does not show that he had at the time any legal interest in this property, so that he has no equity to protect, and nothing from which to imply a trust. It must exist, if at all, in contract; must be an express trust, which cannot be shown by parol. And the giving of the note afterwards did not make any change in that respect; for the note would be void for want of consideration, if the trust did not exist; and the old rule was that a trust never resulted from anything done after the deed. Willard's Eq., 600, and cases there cited; 2 Wis., 552. The trust could not be shown by parol. *Movan vs. Hays*, 1 Johns. Ch. R., 339. 6. The amendments offered were properly refused, because they changed substantially the cause of action. The complaint, as it was, set up an express trust, and sought to enforce its execution; while the proposed amendments made fraud the gravamen of the action. 11 Wis., 556. Moreover this court, in the case of *Fairchild vs. Dean*, 13 Wis., 329, virtually decided that such applications are addressed to the discretion of the court, and are not the subject of review. *Russell vs. Conn*, 20 N. Y., 81. Again, the bar of the statute as to fraud is *six* years, so that the statute had run as to that when the suit was commenced.

*James S. Brown*, for respondent, made the following, among other points: To evoke the power of a court of chancery to engraft upon an absolute deed a condition which would convert it into a mortgage, there must have been a *contract between the parties*, and the writing must, by fraud, accident or otherwise, have failed to express what the parties intended it should express. A right created by operation of law, was in no respect subject to this control of the court, because it did not depend upon the volition of one of the

parties.   A sale by a sheriff on a judgment or decree confers
a title, not because the debtor assents, but because the law
commands; and it is either good *in toto* or absolutely null.
It is not the subject of reformation; no condition can be an-
nexed to it; a mortgage title to real estate cannot be convey-
ed by a sheriff.   Should a sheriff certify that he sold, and in
his deed convey, a mortgage interest, the whole would be
inoperative and void; there could, in such case, neither ac-
tually nor theoretically be an omission of a defeasance by
fraud, accident or mistake.   Those courts whose decisions
are chiefly relied upon to vindicate invasions of the statute,
deny the admission of parol arrangements to affect the oper-
ation of sheriff's deeds.   *Hale vs. Schultz*, 4 Johns., 240; *La-
throp vs. Hoyt*, 7 Barb. (S. C.), 59; *Bander vs. Snyder*, 6 id.,
63; *Dean vs. Dean*, 6 Conn., 289.   2. The sole object of the
foreclosure suits was to *foreclose* and *bar* all equity of re-
demption on the part of *Sweet*.   The court decreed that the
property should be sold to the highest bidder, who should
acquire an absolute title in fee simple, free from all equita-
ble claims in favor of *Sweet*.   The sales were reported to the
court, and the deeds and title of *Mitchell*, as purchaser under
the decrees, was *confirmed*; and *Sweet* was a *party* to those
*records*.   Is there any rule which will authorize this court
to treat those records as nullities?   By agreement with
*Mitchell*, *Sweet* might indeed have *acquired* a trust interest in
the purchases, as any third person might, but that would not
have been inconsistent with the complete destruction of his
original title by the sales, but would have been a *new* title,
acquired from *Mitchell* through the sales, and of course must
have been evidenced by writing.   *Whiting vs. Gould*, 2
Wis., 552; *Stevens vs. Cooper*, 1 Johns. Ch. R., 429; *Parker
vs. Van Courtland*, id., 273; *Lord Inrham vs. Child*, 1
Brown's Ch. R., 92; *Jarvis vs. Palmer*, 11 Paige, 658.   3. The
release of February 6, 1853, cannot be contradicted by par-
ol evidence.   A mortgage is a conveyance of the fee with a
condition annexed upon which the conveyance becomes
void.   The condition or defeasance is not inconsistent with
the granting part.   Courts of equity have never undertaken,
where the parties have clearly expressed their intentions, to

June Term,
1862.

Sweet
v.
Mitchell.

engraft by parol upon their contract provisions inconsistent with what is stated, or destructive of the whole force of the contract; but have added a consistent provision, supposed to have been omitted by accident or fraud, such as a defeasance. But the release in question was not designed to convey the fee; that was already in *Mitchell* by virtue of *Sweet's* warranty deed and the marshal's deed. The only effect which the instrument would have, and all it purported to do, was to release any equity of redemption (if *Sweet* had any) or any right of action growing out of the former transactions. No case, I believe, can be found in which a release of an existing equity of redemption has been held merely to create an equity of redemption in the mortgagor. And can any authority be found for defeating a release of a right to sue, executed under seal, by attaching to it by parol a defeasance? 4. As to the lands conveyed by the *Sage* mortgage, counsel contended that the complaint alleged an express and active trust on the part of *Mitchell*, for the benefit of both *Sweet* and *Sage*, and not merely the relation of mortgagee. 5. As to the property conveyed to *Mitchell* by Blossom, counsel contended that *Sweet*, at the time, had no interest legal or equitable in any part of it; that *Mitchell* paid for the property; and that no defeasance was supressed by fraud or otherwise—it being the intention of all parties that Blossom should part with the entire property, and part with it forever. If the deed had been obtained by *Mitchell* through fraud, *Sweet* could not question the fraud, because the destruction of the deed would leave him without title. He must claim through the deed or be silent. Claiming through the deed, he alleges, not that *Mitchell* held a defeasible title, but that he held an absolute title in trust. R. S. 1849, p. 388, sec. 16; p. 390, sec. 2; p. 318, *et seq.*; *Whiting vs. Gould*, 2 Wis., 552; *Orton vs. Knab*, 3 id., 596; *Rasdall's Adm'rs vs. Rasdall*, 9 id., 379. The note given by *Sweet*, so far as the alleged parol arrangement formed its consideration, is void.

*N. J. Emmons*, on the same side, made the following among other points: 1. Even in New York, where they have reluctantly in the later cases, and solely in obedience to earlier decisions in that state, held that you might, by

parol, convert a deed absolute into a mortgage, the courts have, I believe, uniformly declared that a purchaser at a public sale or one at private sale from a third person, was without the rule. *Botsford vs. Burr*, 2 Johns. Ch. R., 408, and other cases above cited. There may be no good reason in principle or policy why such a distinction should prevail. But the error lies not in raising and observing such a distinction, but in the rule which is sought to be distinguished from. *Rasdall's admr's vs. Rasdall*, 9 Wis., 392. If there be any good reason for the distinction, it is that in the one some courts have held that you may make a mortgage by parol, but that in the latter you can establish an interest by parol only through the doctrine of *resulting trusts*, and these were abolished by our law in 1849, R. S. 1849, chap. 57, sec. 7. So that even treating the transaction of the purchase under the Delano foreclosure, as a loan of money to *Sweet*, and thus the purchase money as paid by him, he cannot still establish a trust. 2. The offer to prove that *Mitchell* had only the interest of a mortgagee after the release of February 7, 1852, is simply an offer to prove and give effect to a contemporaneous parol agreement that the written one should have no force or effect whatever. Upon the proposition contended for, if I give a deed absolute, I may, by parol, show that it was intended not to operate as a deed at all or in any event—not merely that it was a mortgage, which would be something less than its legal import, but that the estate was not to pass at all by the deed. 3. As to the property acquired by the conveyance from Blossom, the title coming from a third person, it is an abuse of terms to call the transaction a mortgage. Admitting the facts alleged, and treating the payment by *Mitchell* to Blossom as a loan to *Sweet*, the circumstances could at most have furnished evidence of a resulting trust. The statute having prohibited resulting trusts, it is sought to avoid the statute by calling the thing forbidden by a wrong name. 4. As to the amendments refused by the court below, counsel cited *Smith vs. Babcock*, 3 Sumner, 583 ; Story's Eq. Pl., § 887 ; Mitford's Eq. Pl. by Jeremy, 67 and note ; id., 387 and notes ; and the following decisions under the Code ; *Gillett vs. Robbins*, 12 Wis., 319 ;

*Newton vs. Allis*, id., 378 ; *Brown vs. Babcock*, 1 Code Rep., 66 ; *Hunt vs. Hudson F. I. Co.*, 2 Duer, 489 ; *Fagen vs. Davison*, id., 158 ; *N. Y. Marbled Iron Works vs. Smith*, 4 Duer, 362 ; *Grosvenor vs. Atlantic Fire Ins. Co.*, 1 Bosw., 469.

June Term,
1862.

SWEET
v.
MITCHELL.

*By the Court*, PAINE, J. In the case of *Rasdall's admr's vs. Rasdall*, 9 Wis., 379, we decided that in the absence of fraud, accident or mistake in the execution of the papers, parol evidence could not be admitted to show an express trust reserved in land conveyed by an absolute deed. At the same time the correctness of the rule admitting such evidence to show an absolute deed a mortgage, was questioned upon principle. But afterwards, in the case of *Plato vs. Roe*, 14 Wis., 453, we held that the latter rule had been so long and so frequently asserted that it ought not now to be changed by the courts. These two decisions will dispose of this case.

October 11.

The plaintiff here seeks for an accounting, and for the redemption of divers lands, the title to which, he claims, was conveyed to the defendant *Mitchell* either by him or for him, and which the latter was to hold upon certain trusts, or by way of mortgage as a security for money. These lands may be divided into three classes, each class presenting a different question : first, those conveyed by the plaintiff directly to *Mitchell* ; second, those which the latter acquired at the foreclosure sale on the Sage mortgage ; and third, those which were conveyed to him by Blossom.

In respect to the first class, the plaintiff claims that the lands were conveyed by him to *Mitchell* by deeds absolute on their face, but really as a security for divers moneys advanced and to be advanced by *Mitchell* for him as loans. If this were all that was shown by the plaintiff upon this subject, it would follow from the decision in *Plato vs. Roe*, that the parol evidence offered by him to show the real nature of the transaction, and that the deeds were really mortgages, should have been admitted. But after making the above allegations, the plaintiff proceeds to allege that while *Mitchell* held the lands so conveyed, the plaintiff made to him another conveyance, including the same lands and some

others and containing the following clause: "It being expressly understood, that if I have any equity of redemption or any interest in and to said lots or parcels of land above described, the same, for the aforesaid consideration, is hereby relinquished," &c.    This conveyance purports to be upon a consideration of fifteen thousand dollars.    The complaint expressly admits that the intention of the parties in making it was, to convey such a title to *Mitchell* that he could sell and convey any portion of the land and give a perfect title to the purchaser, free from any right of redemption in the plaintiff.    And yet, notwithstanding this conveyance and this intention thus admitted, the plaintiff now seeks to come in and show by parol that he was still to retain his equity of redemption, and thus contradict and substantially nullify this release.    This is going much beyond the rule admitting parol evidence to show that an absolute deed was given as a security, and thus convert it into a mortgage.    It is in effect saying, that after such a mortgage has once been made, it is impossible for the mortgagor to convey his equity of redemption to the mortgagee by any instrument which he may not afterwards contradict and set aside by parol evidence.    Believing as we do, that the rule itself was a violation of principle and sound policy, while we have regarded it as our duty to follow it so far as it may be fairly regarded as established by authorities, we are not inclined to extend it any further.    The right which the plaintiff claims was reserved after the conveyance which, it is expressly admitted, was intended to convey the equity of redemption to *Mitchell*—for it is obvious that the latter could not convey it to purchasers from him unless it was first conveyed to him—was substantially a trust.    It would fall, therefore, within the rule established in *Rasdall's admr's vs Rasdall*, instead of that in *Plato vs. Roe.*

The same may be said in respect to the lands bid in by *Mitchell* at the sale on the Sage mortgage.    The facts averred in the complaint show that *Mitchell* became a trustee and not a mortgagee.    He was to take the lands as trustee, and out of the rents and profits or proceeds of sale was to pay the mortgage debt to Sage, and hold the balance, two thirds in

trust for the plaintiff, and one third in trust for Sage. So

far, this is purely a trust, and not a mortgage from *Sweet* to *Mitchell.* Yet the complaint proceeds to aver that *Mitchell* was to hold the two thirds reserved to the plaintiff, by way of security, as he held the other lands conveyed by the plaintiff. But the difficulty of getting at this is, that in order to show any two thirds belonging to *Sweet,* the express trusts in the foreclosure sale must first be proved. It was the interest which *Mitchell* was to hold in trust for him that the mortgage agreement related to. That trust must therefore be first shown before the mortgage agreement can have anything to operate upon. We think, therefore, that the parol evidence offered to prove the allegations of the complaint in respect to these two classes of lands, was properly excluded. And it may be as well here to dispose of the alleged error in refusing to allow the plaintiff to amend his complaint so far as relates to them. The first proposed amendment avers that the defendant procured the release of the equity of redemption by fraud, but does not set up any facts showing how the fraud was perpetrated; for the alleged concealment by *Mitchell* of his intention to have the instrument operate according to its legal effect as it was drawn, can hardly be said to be an act of fraud in procuring it. And the allegations of the original complaint would seem to show that the plaintiff well knew that the conveyance was so drawn as to give *Mitchell* a complete title, so that he might convey such to any purchaser. The only fraud, then, which the proposed amendment would seem to indicate, would be the refusal by *Mitchell* to abide by his alleged verbal promise to hold the lands for the benefit of *Sweet,* and this, as shown in ·*Rasdall's Adm'rs vs. Rasdall,* is not sufficient to take the case out of the statute. The allegation of fraud was too general to require the court to allow it as an amendment on the trial.

But another answer to this amendment, as well as to the one offered in respect to the agreement about the sale on the Sage mortgage, is, that they change entirely the cause of action. The original complaint shows first a mortgage, then a conveyance releasing the equity of redemption and convey-ng other lands, with the express intention of vesting a per-

fect title in *Mitchell*, but upon an alleged verbal agreement by him that he would still hold the lands for the benefit of the plaintiff. This, as already stated, was substantially a trust. In respect to the lands sold on the Sage mortgage, the complaint expressly sets forth an agreement to hold the lands in trust. On the trial, the plaintiff offered parol evidence to prove these agreements, and he was met by the statute of frauds. He then offered to amend, first, by alleging that the conveyance of his equity of redemption, which he had set out in the complaint, was procured by fraud, and thus fall back on his equity of redemption as though no such conveyance had been made; and next, by alleging that the conveyance at the sale on the Sage mortgage was procured by fraud in promising to execute a written agreement showing the trusts, and afterwards refusing to do so. This is an entire change of the grounds of action. In the first instance, it changes it from the enforcement of a trust reserved after the conveyance of the equity of redemption to an enforcement of the equity of redemption itself, as though it had not been conveyed; and in the other, it changes the action from the enforcement of a trust arising out of an agreement by the parties creating it, to the enforcement of a trust for which there was no valid agreement, but which would arise out of the fraudulent acts of the defendant in procuring the title. The policy of the law favors great liberality in allowing amendments to perfect a pleading in respect to the cause of action originally set out. But it does not allow amendments on the trial changing the cause of action from one thing to another. There was no error in refusing these.

But so far as the lands conveyed by Blossom to *Mitchell* are concerned, we are unable to see why the case presented does not come within the rule allowing parol evidence to show the conveyance to have been by way of mortgage. The agreement for a loan, and the loan, are fully averred. The plaintiff gave his note to *Mitchell* for the money advanced by him to Blossom. There is nothing to take it out of the rule, unless it be the fact that the title was not conveyed directly from *Sweet*, but from Blossom for him; and we do not think this should have that effect. It is frequently the case

June Term,
1862.

SWEET
v.
MITCHELL.

that parties desire to give security upon lands the title to which is not in them, but is subject to their control. It is also frequently true that they desire to give it upon lands owned by them, but liable to be sold on judicial proceedings against them. The rule itself being once established, that parol evidence may be admitted to show an absolute deed a mortgage, when such an agreement is clearly established, we do not think it material whether a judicial sale was adopted merely as a means of conveying the title to the mortgagee, or whether it was conveyed to him by some third party for and on account of the mortgagor. These circumstances furnish no substantial grounds for distinguishing the case from a direct conveyance from the mortgagor, and the cases which have established the rule do not make any distinction.

The fact that the agreement by Blossom to convey to *Sweet* may have been within the statute of frauds, is also immaterial. Blossom executed it by conveying to *Mitchell* for *Sweet;* and *Mitchell* can raise no question upon that point, any more than he could if Blossom had conveyed to *Sweet* and then *Sweet* to *Mitchell.*

We think this sufficiently disposes of the questions presented upon this appeal.

We express no opinion upon the question, whether, if it should appear that those entire transactions between the plaintiff and the defendant were entered into with a view to delay and defraud the plaintiff's creditors, it would deprive the plaintiff of any right to the relief he seeks here, or not. It was so claimed by the respondent's counsel, but we shall leave that question to be disposed of after the case has been more fully tried upon the evidence, if it shall then be presented. For the reason that parol evidence should have been admitted to show the relation of mortgagor and mortgagee between *Sweet* and *Mitchell* in respect to the lands conveyed by Blossom, the judgment is reversed, with costs, and a new trial ordered.