Burr vs. The C. C. Thompson & Walkup Co.

BURR, Respondent, vs. THE C. C. THOMPSON & WALKUP COMPANY, Appellant.

*November 11 — November 25, 1890.*

*Recovery of share of logs by tenant in common: Mortgagee holding legal title: Pleading: Parties.*

1. In an action under sec. 4257, R. S., to recover one half of a certain lot of logs, the answer stated facts showing that though the plaintiff had the legal title to an undivided half of the land from which the logs were cut, yet his interest therein was merely a mortgage interest; that the defendant claims the logs under a sale thereof by the equitable mortgagors of the land, who had cut said logs therefrom under an agreement with the plaintiff that they might do so and apply the proceeds thereof on the mortgage debt; that said debt had in that way been fully paid; and that the timber still standing on the land was ample security for the mortgage debt. *Held,* on demurrer:

   (1) The alleged equitable mortgagors were not necessary parties.

   (2) The facts stated constituted a good equitable defense.

2. The fact that an answer alleges facts "as an equitable defense *and counterclaim*," does not render· it demurrable where such facts are a good defense, though they may not constitute a counterclaim.

Burr vs. The C. C. Thompson & Walkup Co.

APPEAL from the Circuit Court for *Bayfield* County.

The following statement of the case was prepared by Mr. Justice Taylor as a part of the opinion:

This action was brought by the respondent under the provisions of sec. 4257, R. S. 1878, for the recovery of one undivided half of a large quantity of saw-logs cut and taken from a certain tract of land, and which, previous to the commencement of this action, had come to the possession of the defendant company. The section under which this action was commenced reads as follows:

"When personal property is divisible and owned by tenants in common, and one tenant in common shall claim and hold possession of more than his share or proportion thereof, his co-tenant, after making a demand in writing, may sue for and recover his share or the value thereof; and the court may direct the jury, if necessary, in any such action, to find what specific articles, or what share or interest, belongs to the respective parties, and the court shall enter up judgment in form for one or both of the parties against the other, according to such verdict."

The plaintiff in his complaint claims, in a general way, to own an undivided one-half of the logs in question, gives a description of the logs, their value, etc., and then alleges that the defendant had possession of the whole of said logs; that he demanded in writing, before the commencement of this action, that the defendant deliver to him one half of said logs, being his share thereof; and that the defendant refused to deliver the same to him, and wrongfully detains the whole of said logs, to his damage $10,000.

The defendant answered, first, a general denial of all the facts stated in the complaint, and afterwards filed an amended answer by permission of the court. This amended answer reads as follows:

"As an equitable defense and counterclaim to the cause of action set out in plaintiff's complaint," the defendant further alleges that John and Peter Ferguson, as copartners,

deal generally in timber, land, and logging contracts; and
that in 1886 they discovered the land from which the tim-
ber in question was afterwards cut, and had made an esti-
mate of the amount of timber on said land, and had also
discovered that one G. Bergland was the owner of said
land and timber, and that they made a contract with said
Bergland to purchase said land and timber for the sum of
$24,000; that said Ferguson Bros. were not able to pay the
cash for said land, and thereupon they entered into an ar-
rangement with the plaintiff to purchase the land for them,
and take title thereto in his own name as security for the
purchase money to be by him advanced; that plaintiff
agreed with the said Fergusons to purchase said land of
said Bergland, and pay the said sum of $24,000, and take
title thereto in his own name as security for the payment
of the purchase money and interest; that upon the pay-
ment thereof he would convey said land to the said Fergu-
sons; *that in the mean time the Fergusons should have the
right to cut and remove the standing timber, sell the same,
and apply the proceeds of such sales to the payment of such
purchase money and interest until the whole was paid,* when
he would convey said land to the said Fergusons or to
whomever they might direct; that in pursuance of such
agreement the plaintiff did purchase the land of said Berg-
land, and paid therefor about the sum of $24,000, and took
the legal title thereto in his own name as security for the
purchase price; that shortly afterwards one F. H. Lewis
entered into copartnership with said Fergusons under the
firm name of "Ferguson Bros. & Lewis," for the purpose
of cutting, marketing, and selling the timber from said land;
that Lewis advanced for the benefit of said firm $12,000 in
money, which was paid to said plaintiff; that thereupon
the plaintiff conveyed, in pursuance of the original agree-
ment, the undivided one-half interest in said land to the said
Fergusons, and they conveyed the same to the said Lewis

for the benefit of said firm, with the understanding and agreement of all the parties that the plaintiff should hold the legal title to the remaining undivided half interest in said land as security for the balance of the purchase money, to wit, the sum of $12,000; that upon the payment of that sum and interest the plaintiff would convey all of said title to the said Ferguson Bros. & Lewis, or to such persons as they might direct; *that in the mean time the said Ferguson Bros. & Lewis should have the right to cut and remove the standing timber from said land, and sell the same, applying the net proceeds of such sales to the payment of the balance of the purchase money and interest.*

The answer then alleges that afterwards the said firm of Ferguson Bros. & Lewis made an agreement with Rood & Maxwell to sell to them all the merchantable pine timber and saw-logs standing on said land, saw-logs and timber to be cut by said firm of Ferguson Bros. & Lewis and delivered at or near the mill of said Rood & Maxwell at Washburn in Wisconsin during that and the succeeding logging season and prior to April 1, 1888, the said Rood & Maxwell agreeing to pay for said logs and timber so cut and delivered $8 per thousand feet; and the time and terms of payment are set out in the answer. The answer then alleges that under said contract, and prior to the 21st of March, 1888, a large quantity of said logs and timber was cut and delivered by said Ferguson Bros. & Lewis to said Rood & Maxwell, and that said Rood & Maxwell paid large sums of money for said logs, which were paid to the plaintiff, to be applied in payment of said balance of the purchase price of said land and interest, and that it was so applied at the time said payments were made, *and that the sums so paid the plaintiff for said purpose were sufficient to pay the said sum of $12,000 and interest, or any other sum or sums remaining unpaid on the purchase money so advanced by plaintiff as before said.*

The answer further states that said Rood & Maxwell purchased the logs in good faith and without any knowledge of any claim of the plaintiff to the same or any part thereof; that afterwards the said Rood & Maxwell made a voluntary assignment for the benefit of their creditors; that on the 21st of March, 1887, the defendant purchased said timber from said assignee in good faith, and for its full value; and that afterwards, and in order to protect its title, it purchased said logs and timber under a sheriff's sale upon execution against Rood & Maxwell in favor of the Third National Bank of St. Paul. The answer further alleges that the plaintiff was fully informed as to the terms and conditions of the contract for the sale and delivery of the pine timber and saw-logs cut upon said land by the Fergusons and Lewis to Rood & Maxwell at the time the same was made, and before the delivery of the logs, and received the benefit of such payments as were made upon said contract. The answer also contains two other allegations, one showing that there is still standing on the land in question pine timber and saw-logs of great value, and more than sufficient to pay the plaintiff the balance remaining due for said purchase price, to secure which he held the title to the one-half of said land; and the other allegation is made upon information and belief that the plaintiff's action was brought and is being prosecuted in the name of the said plaintiff for the benefit of said Fergusons and Lewis, and for no other purpose. The answer concludes as follows: "Wherefore the defendant demands judgment against the plaintiff for an accounting as to said matters, and that said suit be dismissed, and for costs."

To this answer the plaintiff demurred as follows, viz.: "And now comes the plaintiff, and demurs to the counterclaim stated and set forth in the amended answer of the defendant herein, and for grounds of demurrer alleges — *first*, the said counterclaim does not state facts sufficient to

constitute a cause of action; *second*, because there is a defect of parties defendant, it appearing by the said counterclaim that Peter P. Ferguson, John C. Ferguson, and F. H. Lewis are necessary parties thereto."

The defendant, upon its answer, moved the court to make the said above-named Fergusons and Lewis parties to the action. This motion and the demurrer were brought to a hearing before the circuit court, and the court denied the motion to make said persons parties to the action, and sustained the plaintiff's demurrer to the amended answer. The defendant appeals from the order of the court made upon the motion and upon the demurrer.

For the appellant there was a brief by *Tomkins, Merrill & Smith* and *R. M. Bashford*, and oral argument by *Mr. Bashford*.

For the respondent there was a brief by *Raymond & Brennan*, and oral argument by *John H. Brennan*.

TAYLOR, J. Upon a careful examination of the facts stated in the answer, it seems evident that all the rights of the defendant can be adjudicated and protected without the presence of the Fergusons and Lewis as parties. If the facts stated in the answer are true, then the defendant has a good title to the whole of the logs in question as against the plaintiff, and that is all that is necessary for it to show in this action; and if the answer is true, then the Fergusons and Lewis have no interest in said logs as against the defendant. If it be urged that it may be necessary, under some aspect of the defense, to show that the Fergusons and Lewis have paid the purchase money for the land to the plaintiff, in order to make the title of the defendant good, that fact may be shown as well without their being parties to the action as otherwise. So may the fact be shown, as alleged in the answer, that they had the right to cut and sell the logs as against the claim of the plaintiff.

We see nothing in the facts stated in the answer which renders it necessary to bring in the parties named as parties to the action. The order denying the motion was rightfully made and must be affirmed.

Upon what ground the demurrer to the answer was sustained does not appear, unless it be upon the ground that, as the defendant had stated that it pleaded it as a defense and a counterclaim, the demurrer ought to be sustained because it failed in stating facts constituting a counterclaim. It is evident that in the sense in which the word " counterclaim " is used in the statute, the answer does not state facts amounting to a counterclaim. There is no fact stated in the answer which entitles the defendant to any affirmative relief against the plaintiff, but on the contrary all the facts stated are defensive matters, and if proved would entitle the defendant to have the plaintiff's complaint dismissed as asked for in the prayer of the answer. It seems to be urged by the learned counsel for the plaintiff that the demurrer should be sustained because the defendant has misnamed its answer by calling it a counterclaim, when in fact it is merely a defense.

We do not think the mere fact that the answer was improperly named is the subject of a demurrer. We do not think, if in an action on a promissory note the defendant should commence his answer by saying that, by way of counterclaim, he alleges that on a certain day before the action was commenced he had fully paid to the plaintiff the amount due on the note, the pleading should be held not good as not stating a counterclaim, when it is apparent on its face that it states a good defense to the action. Calling it a counterclaim should clearly be treated as an immaterial statement in the answer. If, as would seem to be the idea of the learned counsel for the plaintiff, the pleading can stand as a good defense to the action, notwithstanding the demurrer is sustained because it is not a counterclaim, then

Burr vs. The C. C. Thompson & Walkup Co.

there would seem to be no good reason for sustaining the demurrer. We think that, although the pleader has called the answer a defense and a counterclaim, it is in fact only a defense to the plaintiff's action, and if it states facts constituting a defense then it was error to sustain the demurrer.

It is insisted by the learned counsel for the plaintiff that the answer is not demurred to because it does not state facts constituting a defense to the plaintiff's action, and he declines to enter into an argument upon that point; but, as we think the demurrer should have been overruled if a good defense is pleaded, notwithstanding it was improperly named a defense and counterclaim, we must consider the pleading as a defense, and see if it contains any new matter constituting a defense, within the meaning of the Code. In examining the answer it must be admitted that some of the facts stated may have been admissible under a general or special denial, and do not, therefore, constitute a defense, within the meaning of the Code. Probably the statement made in the answer that the plaintiff authorized the Fergusons and Lewis to cut and sell the timber on the land in which he claims an undivided interest; and that the defendant bought the logs from them or their vendee, could be shown as a defense to the action without pleading it. But there are other facts stated in the answer which may be an equitable defense for the defendant to the plaintiff's action which could not have been given in evidence without pleading them as a defense. So far as the defendant seeks to defend against the plaintiff's action on the ground that the plaintiff's interest in the real estate from which the logs were taken was simply a mortgage interest, and that the persons who cut the logs and sold them to it or its grantor were the equitable mortgagors and in possession with right, as such, to cut and remove the timber so long as the security of the plaintiff was not materially injured thereby, such defense was and is clearly an equitable de-

fense.  In this case, upon the facts stated in the answer, the legal title to the land upon which the logs were cut never was in the defendant.  The legal title to a half interest is in the plaintiff by virtue of a deed from a third person, from whom the defendant and those under whom it claims have derived no legal title, and as to that half, therefore, the defendant and the Fergusons and Lewis are not in a position to attack the legal right of the plaintiff, except by a proceeding in equity to show that the plaintiff holds the half interest as mortgagee in trust for them and those claiming under them.  In the cases in which this court has held that a deed absolute on its face may, in an action at law in ejectment, and without pleading the fact as an equitable defense, show that such deed is a mortgage and so defeat the plaintiff's action, the parties who were permitted to show the fact were parties from whom the other party has taken the deed which is shown to be a mortgage, and so, the mortgagee not having a conveyance in law of the fee of the land, the fee remains in the grantor and mortgagor; but in the case at bar if it be shown that the plaintiff's interest is in fact in equity only a mortgage interest, still the legal title is in him, and not in the defendant or its grantors, so that if this were an action of ejectment for an undivided interest in the land, and the defendant claimed the interest was a mortgage interest and that the mortgage had been paid, under the rules of this court the facts must have been stated as a counterclaim, and relief asked that the plaintiff be compelled to convey the land to the defendant in order to put the legal title in it, whereas, if it had itself given the deed which was declared a mortgage, the legal title remained in it, and there would be no necessity of a deed from the mortgagee to perfect its legal title to the land.

That a person taking the legal title to real estate from a third person may in equity be a mortgagee to some person

for whose benefit the title was conveyed to him, has been frequently decided by this and other courts; and that the facts which constitute such person the equitable mortgagee may be shown by parol evidence is also equally well settled. *Starks v. Redfield,* 52 Wis. 349; *Sweet v. Mitchell,* 15 Wis. 641; *Spencer v. Fredendall,* 15 Wis. 666; *Wilcox v. Bates,* 26 Wis. 465; *Carr v. Carr,* 52 N. Y. 251. Under the answer in this case, the defendant would have the right to show that the plaintiff's claim was an equitable mortgage as against the Fergusons and Lewis, under whom the defendant claims, and that it was paid in full, or, if only paid in part, to show how much had been paid and, if it could, to show that the unsold timber on the undivided half of the land, together with the land, was ample security for the balance due upon his mortgage, and so make its title to the logs cut and removed by the equitable mortgagors good in itself. These matters, we think, constituted a good equitable defense, in whole or in part, to the plaintiff's action. As the defendant has no right to have the title of the lands conveyed to it, there is no reason for asking for affirmative relief.

*By the Court.*— The order denying the motion of the defendant to make new parties is affirmed, and the order sustaining the demurrer to the answer of the defendant is reversed, each party to pay his own costs except that the respondent pay the costs of the clerk of this court; and the case is remanded for further proceedings.