Beebe, Respondent, vs. Wisconsin Mortgage Loan Company and others, imp., Appellants.

*February 27—March 21, 1903.*

*Mortgages: Relation of mortgagor and mortgagee, how created: Form of transfer immaterial: Indebtedness: Implied promise to pay: Parol evidence: Sale by mortgagee:* Bona fide *purchaser: Notice: Remedies: Equity: Parties.*

1. While a mortgage does not create an interest in land and is only a lien on land, a mere incident of some principal thing which it secures, and it is generally true that the relation of debtor and creditor is essential to the relation of mortgagor and mortgagee, the indebtedness being the principal thing which the incident, the mortgage, secures, it is not necessary to the incident that such principal thing be created by an express promise.

2. If a person takes the title to real estate at the request of another, such person agreeing to transfer the property to such other upon the latter's refunding the money paid with interest, whether the agreement to transfer the property be to make the same within a specified time or not, it is competent to find from the circumstances, no fact or facts appearing to indicate to the contrary, that there was an exchange of promises between the parties, made either expressly or by implied understanding, to the effect that such other would reimburse such person for his expenditures and that thereupon such person would convey the land to such other.

3. In the circumstances stated in the last paragraph, the relations of debtor and creditor and mortgagor and mortgagee exist and the remedies for the vindication of the rights of the respective parties are similar to those in case of a formal mortgage.

4. No particular form of words is necessary to create the relation of mortgagor and mortgagee. In determining whether such relation exists it is the substance of things that governs. Any transfer of property as security, regardless of the form characterizing the same, creates such relation.

5. Parol evidence is admissible to show that a writing or several writings taken together were intended to create the relation of mortgagor and mortgagee, though they bear upon their face no semblance thereof, and such evidence alone, if it shows clearly the intention of the parties, is sufficient to establish and render effectual the true character of the transaction.

6. If a person who deals with another in regard to real estate is so informed in a general way of the existence of a claim of a third

person to the property as to bring the matter of such claim home to him as a man of ordinary care in business transactions, he is bound to take notice of all the facts which a fair investigation of the matter would bring to his attention and is charged with knowledge of such facts and the legal effect thereof.

7. If a person having only a mortgage interest in land yet holding the same apparently by an absolute deed thereof, wrongfully deals therewith as his own property by contracting to sell it to an innocent third person, the true owner of the property may sue such person in equity to establish his rights, and without making such third person a party to the suit may successfully invoke the court to fully establish the title to such property in himself, saving the right of such third person to hold him as trustee of the legal title to the property in place of the vendor, liable to convey the same to such third person upon his paying to such owner all sums of money due upon the contract subsequent to the relations between such vendor and such third person being interrupted by the suit.

[Syllabus by MARSHALL, J.]

APPEAL from a judgment of the circuit court for Chippewa county: A. J. VINJE, Circuit Judge. *Affirmed.*

The issues raised by the pleadings and the cause of action of plaintiff will sufficiently appear by the findings of the trial court here given, in the language thereof as near as the same is necessary in order to clearly indicate the idea therein contained: (1) July 28, 1897, and prior thereto, plaintiff owned a vendee's interest in the land described in the complaint, under a contract made in the usual form with him by the holder of the legal title, A. C. Bruce, upon which contract there was due the sum of $42. (2) At the time specifically mentioned plaintiff, being indebted to the defendant loan company in the sum of $75, agreed to assign his land contract to it, the company to thereupon pay the balance due thereon to A. C. Bruce, take a deed from him, and hold the title to the property as security for the payment to it of the $42 and the $75, the total sum being $117, with interest thereon. (3) The agreement made as aforesaid was properly carried out, the same being evidenced as follows: The contract was assigned

to the loan company by an instrument in writing in the usual form. The company thereupon gave plaintiff a written instrument in the form of a receipt and agreement. The receipt acknowledged the transfer to it of the contract, contained a declaration of the purpose of such transfer and an agreement that it was to take a deed of the land, paying the vendor in the contract the balance due him, and convey the land to plaintiff at any time within two years of the date of the paper on payment by him to the loan company of $117 with interest from such date at eight per cent. per annum. Thereafter the company paid Bruce the amount due him and took a conveyance of the land in accordance with the agreement aforesaid. (4) August 24, 1899, the loan company conveyed the land to defendant *Allen,* who at the time thereof had knowledge of all the facts respecting his grantor's interest in the property. (5) March 23, 1900, said *Allen* contracted with defendant Anderson to sell to him one forty-acre tract of land, he having knowledge of plaintiff's rights in the property. (6) August 24, 1899, *Allen* procured a tax deed of the land to be taken in the name of *Jennie A. White,* she allowing her name to be used as a mere cover for a transaction that was really his own. (7) May 1, 1900, *Allen,* in the name of *Jennie A. White,* contracted with Carl Osse to sell him one forty-acre tract of the land for $175, and there is now unpaid upon such contract $90, with interest thereon at the rate of six per cent. per annum. (8) May 31, 1900, said *Allen* contracted with H. Erickson to sell him two forty-acre tracts of the land, Erickson having at the time thereof full knowledge of plaintiff's rights in the property. (9) Said *Allen* has taken, either in his own name or in the name of *Jennie A. White,* tax certificates on the property for the years 1896, 1897, 1898, and 1899, and he still controls such certificates. He expended the sum of $2 in taking the tax deed aforesaid. (10) Before the commencement of this action plaintiff tendered to *Allen* full payment of the amount due upon the contract with the loan

company, together with a sufficient sum to reimburse him for all his expenditures to protect the title to the property, together with interest upon all such expenditures to which he was entitled by law. (11) The balance legally and equitably due said *Allen* from plaintiff, charging the latter with the amount due upon his contract with the loan company and the expenditures made by the company for tax claims and the cost of the tax deed with interest thereon, and crediting him with the amount received by *Allen* upon the Osse contract, is $132.52, which sum plaintiff has deposited with the clerk of the court subject to the court's order.

As conclusions of law the court found that the transactions between plaintiff and the loan company created the relation of mortgagor and mortgagee between them; that *Allen* acquired no better right to the land through the deed from the loan company than such company possessed; that the vendees in the land contracts with *Allen* acted, in making the same, with knowledge of the facts in regard to plaintiff's rights, and stood in no better position than *Allen;* that Osse, as an innocent purchaser, should pay the balance due upon his contract to the plaintiff, who should have the benefit, in the accounting with *Allen,* of the amount paid to the latter upon said contract; that the tax deed and the tax certificates gave *Allen* and *Jennie A. White* no other right than to be reimbursed for the money expended therefor, with the interest provided by law; that on a just and true accounting of all the matters, the balance equitably payable to defendant *Allen,* the same to cover all interests of defendant *Jennie A. White,* is $132.50; that judgment should be rendered accordingly; that it should require the Osse contract to be assigned to plaintiff, a quitclaim deed to be made to him by *Jennie A. White,* all tax certificates in the hands of *Allen* to be delivered to him, suitable instruments to be executed and delivered to him by defendants to release all their rights of record in the property. There were some further provisions in reference to the judgment to

be rendered to fully settle the equities between the parties. Judgment was rendered accordingly. The defendants *Wisconsin Mortgage Loan Company, Raymond Allen,* and *Jennie A. White* appeal.

The cause was submitted for the appellants on the brief of *Dayton E. Cook* and *W. M. Bowe,* and for the respondent on that of *Connor & Leonard.*

MARSHALL, J. The main question to be decided is, Did the court err in concluding from the evidence that the relations of mortgagor and mortgagee were created between plaintiff and the loan company? It is suggested as a conclusive circumstance in favor of appellant that after the land contract was assigned to the company and it gave back the agreement to respondent, the relations of debtor and creditor did not exist between them, an element ordinarily vital to the relations of mortgagor and mortgagee. True, a mortgage, not being an interest in land, but only a lien on land, a mere incident of something it stands for, as security, there must be the principal thing or else there cannot be the incident. If there were the latter in this case it must have been an indebtedness of plaintiff to the loan company which the assignment was given to secure. In determining what the real relations were between the parties, after the exchange of the assignment of the contract for the receipt and agreement, we may look to the situation of the parties at that time, all the circumstances of the transaction, and their conduct in reference thereto subsequently, and all the evidence bearing on the question.

Three elementary principles must be kept clearly in mind in dealing with cases of this sort: (a) A transfer of property as security, regardless of the form thereof, is a mortgage, and, as regards rights or remedies, must be dealt with as such. *Starks v. Redfield,* 52 Wis. 349, 9 N. W. 168; *Brayton v. Jones,* 5 Wis. 117; *Cumps v. Kiyo,* 104 Wis. 656, 80 N. W. 937. (b) If from all the circumstances of the case it appears

clearly that the parties intended to create the relation of debtor and creditor between themselves or to recognize that relation as existing as a basis for a mortgage, their purpose in that regard will be deemed to have been accomplished so far as necessary to carry into effect the incidental purpose to create the relation of mortgagor and mortgagee to secure payment of the indebtedness, though it does not appear that there was the express promise to pay which generally characterizes the creation of such principal relation. *Schriber v. Le Clair,* 66 Wis. 579, 29 N. W. 570, 889; *Gettelman v. Comm. U. Ass. Co.* 97 Wis. 237, 241, 72 N. W. 627. (c) Parol evidence is admissible to show that the purpose of a writing, or several writings taken together, was to create the relation of mortgagor and mortgagee, even though the writing or writings do not bear upon their face any suggestion of such character, and such evidence alone may be effective to establish such purpose if it has sufficient probative force to clearly indicate the same. *Plato v. Roe,* 14 Wis. 453; *Sweet v. Mitchell,* 15 Wis. 641; *Jordan v. Warner's Estate,* 107 Wis. 539, 550, 83 N. W. 946. Under some circumstances the evidence must be more convincing than in others. It is said that to turn an instrument which is absolute on its face into a mortgage by parol evidence, the proof should be so strong that such was the intention of the parties as to leave no substantial doubt on the subject. *Becker v. Howard,* 75 Wis. 415, 44 N. W. 755; *McCormick v. Herndon,* 67 Wis. 648, 31 N. W. 303; *Jordan v. Warner's Estate,* 107 Wis. 552.

The most familiar cases where all of the above principles were applied are those where one person, at the request of another whose land was sold upon execution or foreclosure, bought the same at the sale and took title thereto, agreeing verbally to convey the same to such other upon his repaying the money expended in the transaction, with interest. *Sweet v. Mitchell,* 15 Wis. 641; *Spencer v. Fredendall,* 15 Wis. 666; *Wilcox v. Bates,* 26 Wis. 465; *Hoile v. Bailey,* 58 Wis.

434, 448, 17 N. W. 322; *Schriber v. Le Clair,* 66 Wis. 579, 29 N. W. 570, 889; *Phelan v. Fitzpatrick,* 84 Wis. 240, 54 N. W. 614. It will be observed that one of the most common claims made in such cases was that there was no indebtedness created because there was no promise to pay, and that therefore no mortgage relation was created. That is the claim urged now. The answer of the court uniformly was, either expressly or in effect, that an implied promise to pay arose from the conduct of the parties, and that an express promise was unnecessary. *Phelan v. Fitzpatrick* is a very strong case on the subject. In *Schriber v. Le Clair, supra,* the facts were somewhat different, but the element of indebtedness and promise to pay was found by inference from the conduct of the parties. The general idea governing the cases is this: If a person requests another to pay off an indebtedness on his property and take title thereto and convey the same to such person upon his repaying the money, it is competent to find from such circumstances alone, there being nothing to impair the probative force thereof, an implied promise to refund the money upon the one side and an implied promise upon the other to convey the property upon such repayment being made.

Applying the foregoing to the evidence in this case, it sufficiently indicates the creation of the relation found by the trial court to preclude us from holding that the decision in that regard is against the clear preponderance of the evidence. We are inclined to agree with the suggestion of respondent's counsel that the instrument given to respondent by the loan company shows upon its face that the title to the property was taken as security only. It shows all the circumstances usually characterizing the cases where one person took title to the property of another at a judicial sale to protect such other. The loan company acknowledged receipt of the land contract, plainly indicating that the parties did not intend that it should, by the assignment thereof, become the absolute

owner of respondent's interest in the land. It contained an agreement that the company would pay the vendor in the contract the balance due thereon, thereby becoming liable to such vendor. It further contained an agreement to take the title to the land and to convey the same to respondent at any time within two years from the date of the receipt upon his paying $117 with interest thereon at the rate of eight per cent. per annum. From those features of the paper, applying the rules we have referred to, the court was fully warranted in inferring that the understanding between the parties was that plaintiff should pay the $117 and interest within two years, that there were mutual promises between the parties, and that the respondent's interest in the land was agreed to be held by the company to secure the performance of his promise. In *Phelan v. Fitzpatrick* there was no evidence of any express promise to pay. The decision of the court went upon the theory that since the person who took the title did so at the request of the person who was about to be divested thereof by a judicial sale, he impliedly agreed to convey the land to such person upon her request whenever she might choose to repay the money, and that she impliedly agreed to make such payment within a reasonable time upon being requested to do so. That is quite an extreme case, yet this court did not feel justified in reversing the decision of the trial court that the relations of debtor and creditor and mortgagor and mortgagee were created between the parties.

When we refer to the oral testimony in aid of the writings, a very strong case is made in favor of respondent. It appears that, as a part of the transaction which included the making of the papers, the loan company agreed to compromise its claim of $148 against respondent for $75, on condition of payment of the latter sum and the sum necessary to pay the balance due upon the contract, being secured by an assignment to it of such contract, and that the papers were made in execution of such agreement. That indicates that, while the par-

ties contemplated an extinguishment of the old indebtedness, a new one of $75 was intended to be created in its place, with the further indebtedness of $42, to secure the company for its obligation to pay the balance upon the contract. Before and after the two years mentioned in the paper respondent was recognized as having an interest in the property. He was consulted with reference to making contracts for sales of land; he was requested to pay the taxes; and money was received of him by appellant *Allen* for expenses incurred by him in removing incumbrances from the property. Such circumstances and others that might be mentioned are inconsistent with the idea that there was no promise on the part of respondent to pay the $117 to the loan company, and that the agreement to convey the land was a mere unilateral promise or option.

Appellants' counsel contend that there is no support for the finding that *Allen,* Erickson, and Anderson were severally purchasers with notice of plaintiff's rights. That is based solely on the theory that they cannot be rightly charged with knowledge of more than what appeared upon the face of the paper given to respondent denominated by him a contract for the property. As we have held that such paper was sufficient of itself to indicate that the loan company obtained only a mortgage interest in the property, such contention is immaterial. The evidence shows that the parties all knew respondent claimed that his paper gave him the interest of a vendee under a land contract in all the property. *Allen's* evidence indicates that he knew just what respondent claimed. Respondent testified that he told Erickson and Anderson that his land contract covered the land; that he had several conversations with them about the matter; that he told them the title was in *Allen* and that there was money to be paid to him; that he negotiated with them, as owner of the land, to sell portions thereof. Looking at the evidence in the whole, it seems quite

clear that *Allen* knew as much about plaintiff's interest in the property as he did; that *Allen* made the common mistake of supposing that when default was made by respondent his rights in the land were forfeited, and that Erickson and Anderson took *Allen's* version of his legal rights instead of respondent's. They certainly had sufficient knowledge of respondent's rights to put them on inquiry in respect to all the facts. Therefore, they were chargeable with knowledge of the legal effect thereof, and the court was warranted in finding that they were not innocent purchasers.

Complaint is made because, while Osse is not a party to the litigation, appellant *Allen* is required by the judgment to transfer the land contract with him, and the lien affected thereby, to respondent, so that, while *Allen* is not released from carrying out his agreement with Osse, he is by such judgment deprived of power to do so. It is claimed such relief should not be granted, since Osse was not made a party to the litigation. We are unable to see any ground for complaint in that on *Allen's* part. Osse's rights are not affected by the suit, and could not have been, properly, in any event, if he was an innocent party. He stands as such, and his equitable rights are all protected. Upon paying out his contract to the person entitled to the money he will be entitled to a conveyance from whomsoever shall hold the legal title to the land in trust for him. The danger that he may make a claim against *Allen* which the latter may not be able to discharge according to the terms of the contract is hardly one, under the circumstances, which a court of equity is bound to provide against. *Allen* must be held to have had knowledge, when he made the contract with Osse, that he might not be able to perform as he agreed; that he might be placed in the exact situation in which he now finds himself by reason of this litigation. Osse has all the protection the court could give him, equitably, if he were a party to the cause. He is accorded the

right to all the title to the land which *Allen* is required to convey to respondent, and his right to protection by *Allen* according to the covenants in his contract. Neither he nor *Allen* has any equitable right to complain.

*By the Court.*—The judgment is affirmed.