BEHRENDT, Respondent, vs. BURNS, imp., Appellant.

*December 18, 1907—February 18, 1908.*

*Mortgages: Merger: Payment: Assignment to owner of the property: Cloud on title.*

1. Where it is the intention of the parties and justice requires that interests should be kept separate, equity will prevent a merger.
2. In an action to remove an alleged cloud upon the title of plaintiff to lands, upon the evidence, stated in the opinion, it is *held* that it was the intention of parties to transactions respecting mortgage liens that they should be kept alive and not merged, that defendants had a valid and subsisting lien thereunder, and hence that plaintiff could not maintain her action.

APPEAL from a judgment of the circuit court for Rock county: B. F. DUNWIDDIE, Circuit Judge. *Reversed.*

This action was brought against the Chicago, Milwaukee & St. Paul Railway Company, *Thomas P. Burns,* Katherine Burns, his wife, and Timothy E. Ludden, to remove an alleged cloud upon the title of plaintiff to lots 2, 4, 5, and 6 of Behrendt's subdivision of block 35 of the original plat of the city of Janesville. The defendant *Thomas P. Burns* claims a right of way over lots 2 and 5 upon the ground of dedication, easement as appurtenant to lot 3, and as assignee of a mortgage on lot 3 covering a right of way over lots 2 and 5. He sets up the facts by way of counterclaim and prays foreclosure of his mortgage. The court found substantially as follows:

That on October 30, 1888, one Anton Behrendt, being the owner of lots 1, 7, and 8, block 35, of the original plat of Janesville, executed a mortgage for $7,000 on said lots to Henry Palmer, and on June 27, 1889, executed a second mortgage on said lots to said Palmer for $2,197, and on September 3, 1890, executed a third mortgage to John S. Munich for $2,500, Mary N. Behrendt, his wife, the plaintiff, having no interest except an inchoate right of dower in the premises, joining him in said mortgages; that lots 1, 2, 3, and 4 front easterly on North Bluff street and comprise the east half of said block, and are numbered from the southeast corner of said block from 1 to 4; that lots 5, 6, 7, and 8 front westerly on North Main street and comprise the west half of said block, and are numbered from 5 to 8, commencing at the northwest corner of said block; and said block is bounded on the north by North Second street, on the east by North Bluff street, on the south by North First street, and on the west by North Main street; that on July 30, 1892, judgments of foreclosure were entered on the two Palmer mortgages, Behrendt and wife and Munich being made defendants in said foreclosure actions, and notice of

the pendency of the action duly filed on the 8th day of July,
1892; that in each of said judgments it was ordered and de-
creed that the defendants, their heirs, respectively, and all
persons claiming under them subsequent to the filing of the
notice of the pendency of said action, be forever barred and
foreclosed of all right, title, interest, and equity of redemp-
tion in the mortgaged premises, except the right to redeem
as provided by statute; that no sale was had under the judg-
ment of foreclosure on the senior mortgage, but a sale was
had under the judgment of foreclosure upon the junior mort-
gage on the 20th day of June, 1894; that at said sale lots
7 and 8 and west half of lot 1 were sold to one Stanley B.
Smith subject to the foreclosure judgment under the senior
mortgage; that the east half of lot 1 had been theretofore
sold to one Godden by Anton Behrendt subject to the fore-
closure judgments; that a sheriff's deed of said lands bid off
by Smith was issued by the sheriff to him, and said sale was
duly confirmed on the 20th day of June, 1894; that prior
to said sale and on the 10th day of January, 1894, Anton
Behrendt, being unable to redeem said premises from the
judgments of foreclosure, for the consideration of $500
made an agreement with Stanley B. Smith and Arnold E.
Shumway to purchase both said judgments in favor of
Palmer in order to prevent a sale and to extend the time to
redeem from both judgments; that pursuant to this agree-
ment Smith and Shumway purchased the judgments and
took assignments from Palmer for the purpose of securing
themselves for the money paid to Palmer, and postponed
the sale until June 20, 1894; that subsequent to such as-
signment and prior to the sale aforesaid Anton Behrendt
caused lots 1, 7, and 8 in said block 35 to be replatted and
subdivided into seven lots, numbered from 1 to 7, and desig-
nated as "Behrendt's Subdivision of lots 1, 7, and 8, Block
35, Original Plat," which plat was recorded on the 22d day
of March, 1894; that lots 2 and 5 were platted twelve feet

wide, with the intention that Behrendt might convey, if he saw fit, rights of way over said lots to abutting owners on either of said lots 2 and 5; that after the assignment of said judgments Behrendt sold lot 7 to one Godden for $1,170 and lot 1 to one Ludden for $2,176, with the knowledge and consent of Smith and Shumway, who received and applied said sums in part payment of the amount paid to Palmer; that on April 6, 1894, Behrendt and wife conveyed by warranty deed to Ludden lot 1, "together with a right of way in common with others over lots 2 and 5 of said subdivision, reserving to the grantors and their heirs the right to construct a building at a height of not less than ten feet above the ground over and across lots 2 and 5;" that Ludden went into possession of the premises and so remained in possession until October 23, 1894, when he conveyed his interest in lots 1, 2, and 5 to Lienau, and on October 23, 1894, Lineau quitclaimed to Anton Behrendt lot 5; that subsequently by mesne conveyances there was conveyed to the defendant Chicago, Milwaukee & St. Paul Railway Company lot 1 and a right of way over lot 2; that on June 20, 1894, Smith and wife conveyed to Frank E. Behrendt, son of Anton and *Mary N. Behrendt,* lots 4, 5, and 6, and on July 20, 1894, lot 3, and on September 27, 1894, lot 2; that on April 6, 1894, Ludden and wife mortgaged to Stanley B. Smith the premises conveyed to him by Anton Behrendt to secure the payment of $1,500, the personal loan of Smith to Ludden; that said mortgage was foreclosed and judgment entered on December 30, 1899, which judgment was subsequently assigned to and is still owned by the Chicago, Milwaukee & St. Paul Railway Company; that prior to the 20th day of October, 1894, there was paid to Smith and Shumway, assignees of the foreclosure judgments in *Palmer v. Behrendt et al.,* upon which no sale was had, the amount of said judgment and also $500 compensation to Smith and Shumway for their services; that on the 26th day of October,

1894, said Smith and Shumway executed and delivered to Timothy E. Ludden a quitclaim deed to release any interest of the grantors to lots 1, 2, and 5 acquired by said Palmer's foreclosure judgments; that on December 27, 1897, for the expressed consideration of $4,200, Frank E. Behrendt and wife conveyed to plaintiff, *Mary N. Behrendt,* by quitclaim deed, lots 2, 3, 4, 5, and 6; that on the 21st day of July, 1894, Frank E. Behrendt executed and delivered to one Allen E. Rich a mortgage upon lot 3 to secure the payment of $4,200, which amount was paid to Smith and applied on the amount remaining unpaid to him; that on September 18, 1894, Frank E. Behrendt executed to John F. Munich a second mortgage upon lot 3, "together with a right of way in common with others over lots 2 and 5 of said subdivision" to secure $2,500, which mortgage was given to take the place of a prior mortgage given by Anton Behrendt to Munich, which had been cut off by sale under the Palmer judgment of foreclosure and also released of record, which second mortgage to Munich was assigned to Shumway on August 13, 1895; that on November 30, 1896, an action to foreclose the Rich mortgage was commenced, Frank E. Behrendt and wife and Shumway being made defendants, it being alleged that Shumway had a subsequent mortgage; that a foreclosure sale pursuant to a judgment in said action was made of lot 3 and a sheriff's deed executed and delivered to Rich, purchaser at the sale on April 30, 1898, which sale was confirmed; that said judgment decreed and adjudged that defendants and all persons claiming under them be barred and foreclosed of all right, title, interest, and equity in the premises; that on April 10, 1898, and prior to the sale, Shumway procured from Rich an option for ninety days to purchase lot 3 for the sum of $5,494.03, with interest, and that in case such option should not be exercised within said time all the rights to purchase should be at an end, which option was extended to September 1, 1898;

that said option was procured under the belief on the part of Shumway that he would thereby protect his second mortgage, being the Munich mortgage on lot 3 and covering the right of way over lot 2; that said Shumway induced James H. Burns and *Thomas P. Burns* to purchase said lot 3; that said Rich by warranty deed dated August 31, 1898, conveyed said lot 3 to said James H. and *Thomas P. Burns;* that subsequently said James H. Burns conveyed his interest in said lot 3 to defendant *Thomas P. Burns,* who is now the owner and in possession thereof and the brick hotel thereon; that in November, 1903, said Shumway assigned said Munich mortgage to said *Thomas P. Burns,* having previously delivered to him the note described therein; that defendant Chicago, Milwaukee & St. Paul Railway Company, prior to the commencement of this action and in November, 1900, purchased lot 1 of said Behrendt's subdivision, and erected thereon and on lots 5 and 6 of block 35, original plat, a freight depot, extending from the sidewalk on the south side of North Second street south to within about eight feet of the north line of lot 2 in said subdivision; that lot 3, except a small rectangular area in the northeast corner thereof, was at the time of the commencement of this action occupied by a three-story brick hotel owned by defendant *Thomas P. Burns;* that lot 4 was at the time of the commencement of this action occupied in part by the Union Hotel; that lot 2 was wholly unoccupied by any building except a small frame outbuilding at the rear; that lot 5 had across the south end a board fence with a large gate therein, which had been there for many years and was used in connection with the Union Hotel and had been for many years; that there has been no adverse user of either of lots 2 or 5 by any of the defendants or their grantors, and that any use of said lots by said defendants or their grantors has been by and with the permission and consent of the plaintiff herein or her grantors; that there has been no dedication by the plaintiff or any of her grantors of said lots 2 and 5 to the

public for use by the public as an alley, and that said lots 2 and 5 are not so located with reference to said lots 1 and 3 as to make a right of way over them necessary to the enjoyment of said lots 1 and 3; that plaintiff at all times has resided on lot 4 of said Behrendt's subdivision of block 35 of the original plat of Janesville, and said Anton Behrendt and plaintiff have during all of said time lived together as husband and wife.

The court found, as conclusions of law, that the said defendant Chicago, Milwaukee & St. Paul Railway Company, under the conveyances to said Ludden by said Anton Behrendt and wife and by mesne conveyances from said Ludden to said defendant Chicago, Milwaukee & St. Paul Railway Company, has and is entitled to a right of way in common with others over said lot 2, with the right of the plaintiff, her heirs and grantors, to construct over said lot 2 a building of not less than ten feet in height above the ground; that said defendant railway company has no right, title, or interest in and to said lot 5 of said subdivision; that the mortgage given by said Frank E. Behrendt and wife to John F. Munich and by said Munich assigned to Shumway was cut off and barred as a lien or claim upon said lot 3 by the said judgment of foreclosure of the mortgage for $4,200 given by Frank E. Behrendt to Allen E. Rich; that the right of way over said lots 2 and 5 conveyed in said mortgage to said Munich was appurtenant to such interest as said mortgage conveyed in and to said lot 3, and was cut off and barred by said foreclosure judgment and sale thereunder in the case of *Rich v. Behrendt et al.;* and said defendant *Thomas P. Burns* and Katherine Burns, his wife, have no right, title, or interest in or to, or lien or claim upon, either of said lots 2 and 5 of said Behrendt's subdivision of said block 35 of the original plat of Janesville by virtue of said Munich mortgage, nor under any other claim by them made thereto.

Judgment was entered in accordance with the findings

of fact and the conclusions of law, adjudging, among other things, the plaintiff's ownership in fee and right of possession of the lands in question and that her right be established against any and all claims of defendant *Thomas P. Burns* and Katherine Burns and Timothy E. Ludden, and that they be barred against having any right, title, or interest in said lands adverse to the plaintiff. The defendant *Thomas P. Burns* appealed.

*J. J. Cunningham* and *William G. Wheeler,* for the appellant.

For the respondent there was a brief by *Ryan & Oestreich,* and oral argument by *E. H. Ryan* and *O. A. Oestreich.*

KERWIN, J.  The history of this case is quite fully detailed in the findings of fact, which are supported by the evidence.  The agreement between Anton Behrendt, original owner of the premises covered by the Palmer and Munich mortgages, and Shumway and Smith was made in pursuance of a scheme by which Shumway and Smith, in consideration of $500, should handle the mortgaged property and pay off the mortgages with a view of saving something out of the property for Behrendt.  It appears from the established facts that this scheme was quite successfully carried out in accordance with the agreement and intention of the parties.  The judgments on the Palmer mortgages were assigned to Smith and Shumway and the mortgages paid, the assignments being taken to secure the amounts paid, and, in order to enable Smith and Shumway to more advantageously handle the property, a sheriff's deed was executed to Smith on a sale under the junior Palmer mortgage.  Before this sale and subsequent to the assignments to Smith and Shumway, Anton Behrendt, mortgagor under the Palmer and Munich mortgages, in pursuance of the agreement made with Smith and Shumway and with a view of more success-

fully handling the property, replatted and subdivided it into lots numbered from 1 to 7, inclusive. It appears from the evidence that this was thought necessary in order to dispose of the property to advantage, lots 2 and 5 being platted about twelve feet wide and in such way as to abut upon other lots with a view of using lots 2 and 5 for right of way purposes in connection with lots on either side thereof. It also appears from the evidence that the plaintiff had knowledge of the facts respecting the replatting and the purpose thereof and was present during the conversations between her husband and Shumway and Smith, and agreed that the replatting was the proper and only thing to do because the property could not be sold to advantage without it. Also the matter of sale to Ludden and Godden was talked over with plaintiff. The sales by Behrendt and plaintiff to Ludden and Godden, referred to in the statement of facts, with knowledge and consent of Smith and Shumway, the application of the proceeds of such sales upon the indebtedness to Smith and Shumway, together with other moneys raised on the property through Smith and Shumway and Behrendt, the execution of the new mortgage to take the place of the Munich mortgage, which on the face of the record appeared to be barred, as well as the release by Smith and Shumway to Ludden of their right-of-way interests in lots 2 and 5 which appeared cut off by the foreclosure, show very clearly the execution and carrying out of the agreement between Anton Behrendt and Smith and Shumway, which amounted to a payment of the two Palmer mortgages, leaving the Munich mortgage unpaid and perfected of record by the execution of the new mortgage for $2,500 assigned to and held by Shumway. The evidence also shows clearly and without dispute that before the sale under the Rich mortgage an agreement was made between Shumway and Rich by the terms of which Rich was to bid in the property at the foreclosure sale for Shumway, and Shumway agreed to take care of the amount due within a

certain time, he stating to Rich that he wanted to protect his second mortgage, and that if he would bid in the property for him he (Shumway) would pay his claim, which Rich agreed to do. This agreement was carried out, and at the direction of Shumway Rich deeded the property to the defendants *Thomas P. Burns* and James H. Burns, Shumway at the same time conveying to *Thomas P. Burns* the mortgage. It also appears from the evidence that at least the greater part of the Munich mortgage had been unpaid, and that when Shumway sold it to Burns he did not get all of his money out of it. So it seems very clear from the established facts that the two Palmer mortgages were paid or redeemed from by transactions between the Behrendts and Smith and Shumway, and that the property was cleared of the liens thereon at the time of the execution of the last Munich mortgage and the Rich mortgage. And it is equally clear that the agreement between Shumway and Rich to the effect that Rich should bid in the property under the foreclosure sale on his mortgage for the benefit of Shumway, which agreement was carried out and the property conveyed to *Burns* by direction of Shumway, as between Rich and Shumway continued the relations between Rich and Shumway, so that Shumway's mortgage continued an existing lien not only upon lots 2 and 5, but also upon lot 3. All of the testimony shows that this was the object and intention of the parties and was strictly in accordance with the agreement between them, and so entered into and carried out for the express purpose, as appears from the testimony, of preventing the Munich mortgage, owned by Shumway, from being cut off by the Rich foreclosure. In this way the interests under the Rich foreclosure and the Shumway mortgage were kept separate and no merger took place. This is strictly in accordance with the agreement and understanding of the parties, and no reason is perceived why such agreement is not valid and binding between the parties. It is certainly in

the interest of justice and fair dealing. Shumway made the agreement with Rich and carried it out, as the evidence shows, for the purpose of protecting his mortgage; and *Burns* purchased the mortgage from Shumway for the purpose of preserving the lien of said mortgage. The intention of the parties, from the evidence of both Shumway and *Burns,* was that the mortgage interest assigned to *Burns* by Shumway should be kept alive, and, where such is the intention of the parties and justice requires that the interests should be kept separate, equity will prevent a merger. *Goulding v. Bunster,* 9 Wis. 513; *Webb v. Meloy,* 32 Wis. 319; *Jones v. Jones,* 64 Wis. 301, 25 N. W. 218.

Counsel for respondent argues that the only way the lien of the Munich mortgage could be kept alive was through a redemption of the Rich mortgage, and that there could not have been a redemption because there was a sale under the mortgage. But, as before observed, this sale was made through an agreement between Rich and Shumway, which in effect continued the relations between the parties under their mortgages. 1 Jones, Mortg. (6th ed.) § 1047*a; Heald v. Jardine* (N. J.) 21 Atl. 586; *Phelan v. Fitzpatrick,* 84 Wis. 240, 54 N. W. 614; *Beebe v. Wis. M. L. Co.* 117 Wis. 328, 93 N. W. 1103. The fact that Rich's judgment was paid by procuring the money through a transfer of the property to *Burns* by order of Shumway was a payment by Shumway as the holder of a subsequent mortgage for the purpose of keeping his second mortgage alive and transferring it to *Burns.* It is further contended by counsel for respondent that if there was a redemption merely of the Rich mortgage by Shumway, in such event *Burns,* as the assignee of the Shumway mortgage, must foreclose not only upon lots 2 and 5, but also upon lot 3, since the mortgage covers lot 3 and right of way over lots 2 and 5. It may well be, as contended by respondent's counsel, that the counterclaim for foreclosure should cover lot 3 as well as lots 2 and 5, the en-

tire lien under the Shumway mortgage passing to *Burns*. It appears under the amended answer that the allegations are sufficiently broad to cover a foreclosure under the counterclaim upon lot 3 as well as right of way over lots 2 and 5. However, if there be any doubt as to the sufficiency of the allegations in this regard, an amendment would doubtless be allowed. From what has been said it follows that the defendant *Thomas P. Burns* has a valid and subsisting lien under the Shumway mortgage on lots 2, 3, and 5; therefore the plaintiff cannot maintain this action.

*By the Court.*—The judgment of the court below is reversed, and the cause remanded for further proceedings according to law.

BASHFORD, J., took no part.