BENEDICT, Plaintiff in error, vs. THE STATE, Defendant in error.

*April 10—May 11, 1926.*

*Criminal law: Information: Time of alleged offense: Proof: Grand larceny: Taking brick from pile: Evidence: Bill of sale given by defendant: Explanation by parol testimony: Value of property taken: Prior conviction of defendant: Effect of conviction reversed: Cross-examination by court: Exceptions: Introducing matter foreign to the issues.*

1. An information in a prosecution for the larceny of brick having charged the offense as of June 15, 1924, proof of the theft was properly limited to that year. p. 268.

2. The only proof of the theft being the admission of the accused that he took about 500 brick, some of them broken and worth about $22 per thousand, the finding of the jury that the value of the brick taken was $135 is *held* not to be sustained by the evidence, the jury being either mistaken, or the verdict the result of prejudice and passion. p. 269.

3. Whether a bill of sale of the brick was given as a cover to protect the defendant against his creditors in his building operations is material on his intent in taking the brick, and evidence offered by him to show circumstances attendant upon the giving of the bill of sale should have been received. p. 271.

4. The record of the conviction of the defendant of a crime standing against him as a valid conviction at the time of the trial can be shown, either on cross-examination or by the record, to affect his credibility as a witness; but such conviction cannot be shown if it has subsequently been set aside. p. 272.

5. The cross-examination of the defendant by the court before a jury in a criminal case may be reviewed though the questions were not objected to. p. 273.

6. Where the defendant had been cross-examined by the court as to a previous conviction which had been set aside, the refusal of the court to permit him to state the reason for his conviction is error. p. 273.

7. The refusal of the court to strike out the answer of a witness to the effect that he had had trouble with the defendant, who he stated had beat him out of money, is prejudicial error, as introducing a serious charge against the defendant, foreign to the issues and which the defendant was not at liberty to rebut. p. 273.

ERROR to review a judgment and sentence of the circuit court for Marathon county: A. H. REID, Circuit Judge. *Reversed, with directions.*

The plaintiff in error, hereinafter referred to as the defendant, was found guilty by a jury on the 28th day of November, 1925, on the charge of larceny of 4,000 common brick, 500 fire brick, and 500 finish brick, all of the value of $135.

The defendant was sentenced to imprisonment in the state prison for an indeterminate term of not less than one year nor more than three years. Thereafter the defend-

ant made a motion for a new trial, which motion was over-ruled. From the judgment and sentence of the court and the order overruling the motion for a new trial, the defendant sued out a writ of error to this court.

For the plaintiff in error there was a brief by *Fred R. Wright,* and oral argument by *Mr. Wright* and *Mr. William H. Timlin,* both of Milwaukee.

For the defendant in error there was a brief by *John W. Kelley,* district attorney of Oneida county, and oral argument by *Mr. Kelley* and *Mr. J. E. Messerschmidt,* assistant attorney general.

CROWNHART, J. The defendant, on the 27th of August, 1921, delivered to the Minocqua Lumber Company, largely owned and managed by its president, Mr. Schlecht, a bill of sale including, among other things, the brick which the defendant was charged with stealing.

The brick were shipped from Milwaukee and were unloaded at Freiheit's Spur, in Oneida county, and were there at the time the bill of sale was given, or shortly thereafter. The information charged the offense as of June 15, 1924, and the proof of theft was limited properly to that year. The president of the company testified that the brick never came into its possession but were left at Freiheit's Spur from August, 1921, to June, 1924. He admitted, however, that some of the brick were taken away in 1922 and some in 1923. He gave the value of the brick as follows: 4,000 common brick, at $20 per thousand, $80; 500 fire brick, $35; 500 finish brick, $20,—all of the value of $135.

Schlecht further testified that he saw the brick at Freiheit's Spur in the summer of 1924, and that he should judge there were somewhere near 4,000 brick there at that time.

The defendant assigned as error that the judgment is

contrary to the evidence, in that there is no evidence to sustain the conviction of larceny of the property and of the value as charged in the information.

There is great discrepancy between the value as proved by the State and the value as found by the jury. The jury found the total value of the 5,000 brick charged in the information as testified to by Schlecht, notwithstanding Schlecht testified that there were only about 4,000 brick at the Spur in 1924.

There were three witnesses to the alleged theft, each testifying to the same and single act of larceny. They testified that in May or June, 1924, they were at Freiheit's Spur in the daytime and saw the defendant taking a small load or jag of brick from the Spur, and that he finished out his load by taking lumber and other material from a box car. "He just put on a few brick, and then he run over to the other car and filled it with lumber and some round veneer sticks they had there—had a carload put in there." The defendant admits taking a few brick at this time. He testified that he took about 500 brick, some of them broken, and that they would be worth about $22 a thousand. There was no other proof as to the larceny in question.

It seems that the evidence clearly does not justify the finding of the jury as to the value of the brick taken. The discrepancy is so large as to lead to the conclusion that the jury were mistaken or that the verdict was the result of prejudice and passion. The result must be considered as prejudicial, for the reason that under the evidence the value of the brick taken was less than $15, and the crime proven would be petty larceny and not grand larceny.

The defendant also assigns as error that the court excluded evidence offered by the defendant to show circumstances attending the giving of the bill of sale.

It was the contention of the defendant that the bill of

sale was given as security and not as an unconditional sale. The president of the company testified that he was to pay for the brick by selling the same and giving the plaintiff credit therefor on defendant's account which he owed the lumber company. It should be noted that the brick were unloaded at the Spur in August, 1921, and none of them were sold or removed by the lumber company during that time. The president testified that the company did not come into possession of the brick. The brick were piled in the open in an isolated place, subject to be carted off by any one. The lumber company had not complied with the agreement to sell the brick and apply the proceeds on defendant's account. The question of consideration for the bill of sale was open to oral testimony. *Beebe v. Wis. M. L. Co.* 117 Wis. 328, 93 N. W. 1103. According to Schlecht's testimony, the brick were practically abandoned. But the defendant attempted to prove that the bill of sale was in fact given as a cover to protect the defendant against his creditors. He seems to have been in the business of building cottages, and to have had dealings with the lumber company and to have owed the lumber company. The defendant claims that he had given other bills of sale of other material for like purposes,—five or six of them. The court ruled that the bill of sale spoke for itself on the ownership of the brick, and that title was in the Minocqua Lumber Company. Mr. Reeves, a practicing attorney of Rhinelander, was attorney for the Minocqua Lumber Company, and was doing some work for them on the day the bill of sale was signed. Defendant's attorney asked him this question on the stand:

"*Q.* Do you know whether or not this was to be an absolute bill of sale? Was there anything said as to whether the title was to be conveyed to Minocqua Lumber Company? *A.* Yes.

"The Court: It would be presumed to be that. We will take the bill of sale just as it reads."

We think the question of whether or not the bill of sale was given as a cover to protect the defendant against his creditors in his building operations was material on the intent of the defendant in taking the brick, and should have been received.

The defendant further assigns as error that the court erred in admitting evidence of the previous conviction of defendant and in commenting thereon and in denying defendant an opportunity to tell in a general way the nature of that offense.

On cross-examination the defendant was asked if he had been previously convicted, to which he answered "No." Then the following took place:

"*Q.* You were never tried nor convicted for any offense then? *A.* Yes, sir, I was tried once on a charge of getting money by misrepresenting a piece of land, and the court set it aside because it was wrong.

"*Q.* That is, it was tried in the wrong county? *A.* No, sir.

"The Court: This court knows about that.  Be careful.

"*Q.* The venue was wrong.  It should have been tried in Milwaukee county instead of Oneida county, isn't that true? *A.* When I was able to get my witnesses—

"Mr. Kelley: If the court please—

"The Court: That was tried in Oneida county, wasn't it? *A.* Yes, sir.

"The Court: And there was a verdict of guilty returned against you? *A.* That is true.

"The Court: And the circuit court for Oneida county, myself sitting as Judge, set aside the verdict because the proper place to try it was in Milwaukee county and not in Oneida county? *A.* Yes, sir.

"The Court: That is the case? *A.* Yes.  That is true.  But I was convicted because—

"The Court: Wait a moment.  That is all we are concerned with.

"Mr. Van Hecke: I would like to have it clear to the jury there is no conviction standing against him.

"The Court: It is true there is no conviction standing against him in that."

The court in this instance knew that the evidence which was being brought out by his questions related to a matter in which there had been a mistrial and that the conviction had been set aside. There is no question but that the record of the conviction of the defendant of a crime, which stood against him as a valid conviction at the time of the trial, could be shown either on cross-examination or by the record to affect the credibility of the witness. Sec. 4073, now sec. 325.19, Stats.; *Koch v. State,* 126 Wis. 470, 473, 106 N. W. 531. But the conviction, having been set aside, stood for naught, and it was entirely inadmissible to prove that conviction on cross-examination or by the record. The court did prove the conviction, and then indicated very plainly that the conviction was set aside solely on the ground of lack of venue. The jury may very well have gained the impression that the defendant was guilty nevertheless.

"On the trial of a person for a particular offense, evidence tending to prove that he has committed other distinct offenses is incompetent and generally prejudicial." *Topolewski v. State,* 130 Wis. 244, 249, 109 N. W. 1037.

"From the time when advancing civilization began to recognize that the purpose and end of a criminal trial is as much to discharge the innocent accused as to punish the guilty, it has been held that evidence against him should be confined to the very offense charged, and that neither general bad character nor commission of other specific disconnected acts, whether criminal or merely meretricious, could be proved against him. This was predicated on the fundamental principle of justice that the bad man no more than the good ought to be convicted of a crime not committed by him." *Paulson v. State,* 118 Wis. 89, 98, 94 N. W. 771; *Davis v. State,* 134 Wis. 632, 641, 115 N. W. 150.

The State claims questions by the court were not objected to and hence may not be reviewed. In a criminal case, if the defense should interrupt the court with ob-

jections to his questions, it would be more likely to prejudice its case with the jury than if the objectionable evidence were let in. The defense should not be required to object to cross-examination of defendant by the court before a jury.

"Examination of witnesses by the court is not *per se* a ground for a new trial. This practice, however, is a dangerous one, and if the discretion of the court in the premises is abused a new trial will be granted, as where the examination is of such a character as to tend to discredit a witness for defendant, or to lend credibility to a witness for the prosecution, or to involve an intimation of opinion on the evidence, or where the judge expresses an opinion unfavorable to defendant or as to the witness' testimony." 16 Corp. Jur. 1137. Also see sec. 2405*m*, now sec. 251.09, Stats.

The defendant, having been searchingly cross-examined by the court, attempted to tell in a general way the reason of his conviction. He said: "Yes. That is true. But I was convicted because—," and the court stopped him, saying, "Wait a moment. That is all we are concerned with." This was error. *Remington v. Judd,* 186 Wis. 338, 341, 202 N. W. 679.

A witness for the State, testifying as to defendant's reputation for truth and veracity, on cross-examination testified:

"*Q.* You had some trouble with him [defendant], didn't you? *A.* I had some trouble with him?

"*Q.* Yes. *A.* Sure. He beat us out of our last cent; that is why I had trouble with him.

"Defendant's attorney: I move to have the last part of the answer stricken out.

"The Court: Let it stand."

The defendant complains of this ruling. The ruling clearly was error and prejudicial. It introduced a serious charge against the defendant, foreign to the issues, which he was not at liberty to rebut.

Other errors are assigned, but sufficient has been said to show that the defendant is entitled to a new trial. Other errors assigned are not likely to arise on a future trial, and they are not considered.

*By the Court.*—The judgment of the circuit court is reversed, with directions to grant a new trial to the defendant.